UNITED STATES, Appellee

v.

Ina J. GUYTON-BHATT, Captain
U.S. Army, Appellant

No. 01-0386

Crim. App. No. 9800418


United States Court of Appeals for the Armed Forces

Argued November 28, 2001

Decided June 19, 2002


CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, and BAKER, JJ., joined. SULLIVAN, S.J., filed an opinion concurring in the result.


Counsel

For Appellant: Charles W. Gittins (argued); Colonel Adele H. Odegard (on brief); Lieutenant Colonel David A. Mayfield, Major Jonathan F. Potter, and Captain David S. Hurt.

For Appellee: Captain Braulio Mercader (argued); Colonel Steven T. Salata, Lieutenant Colonel Denise R. Lind, and Major Margaret B. Baines (on brief); Captain Jennifer A. Parker.

Military Judge:  Debra L. Boudreau


**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.**

United States v. Guyton-Bhatt, No. 01-0386/AR

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to her pleas, appellant was convicted by officer members at a general court-martial of conduct unbecoming an officer by failing to pay a just debt and altering a promissory note and lying about it, in violation of Article 133, Uniform Code of Military Justice (UCMJ), 10 USC § 933. Appellant was sentenced to a dismissal, reprimand, and forfeiture of all pay and allowances. The convening authority approved the sentence of a dismissal, reprimand, and forfeiture of $2,472 pay per month for eighteen months. The Army Court of Criminal Appeals modified the findings on the grounds of factual insufficiency and reassessed the sentence. The Court of Criminal Appeals disapproved the dismissal and further reduced the forfeitures and modified the reprimand. 54 MJ 796, 806-08 (2001).

We granted review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY FAILING
> TO SUPPRESS APPELLANT'S JULY 1, 1997, ORAL
> STATEMENT TO CPT C, IN WHICH CPT C FAILED TO
> PROVIDE APPELLANT WITH ARTICLE 31, UCMJ,
> WARNINGS.

We hold that Captain (CPT) C violated Article 31, but independent evidence supporting the conviction renders the error harmless.

FACTS

In August 1996, after seeing a 1986 Jaguar advertised for sale, appellant met with the owner, Sergeant First Class (SFC) R. They discussed the terms of buying the vehicle. Appellant told SFC R that she had pay problems and wanted to work out some financial terms for buying the vehicle. She agreed to buy the vehicle for $8,000, paying $500 per month for eight months, and the remainder, $4,000, when she settled on a house she hoped to buy. SFC R did not think there would be a financial problem since appellant was a psychologist at Madigan Hospital, Fort Lewis, Washington, and an officer. The next day, at her request, he gave appellant immediate possession of the Jaguar. Later that week, she came to his office and gave SFC R $500 cash as an initial payment on the Jaguar.

In September 1996, appellant did not make any payment. SFC R left Fort Lewis on September 5, on emergency leave, and after temporary deployment to Korea, returned to Fort Lewis in mid-October. When he returned, he called appellant about payments, and she said she was having financial problems. Like September, SFC R did not receive any payments during October or November.

In November, SFC R again deployed to Korea. He had the Sergeant Major make an inquiry, and he called appellant himself. Appellant told both that she was still having pay problems.

3

When he returned from deployment in November, SFC R thought it was time to put the contract in writing. Appellant agreed and signed a promissory note dated November 1, 1996. The promissory note, when originally executed by appellant, indicated that appellant would not begin paying on the car until January 15, 1997.

In December, SFC R received no payment from appellant. He contacted her again, and she said she was still having pay problems. She told SFC R that she had executed the promissory note and set payments to begin in January, without consulting him. SFC R asked at that time if appellant wanted him to take the vehicle back. She said, "No ... you don't want to sell me the vehicle?" SFC R did not press her about the promissory note because he thought that when appellant's pay issue was settled, she would pay the total amount.

In January 1997, SFC R had not received a copy of the promissory note or any payment beyond the initial $500 one. However, appellant said she was going to start paying on the promissory note. She did not. SFC R made another inquiry in January, and appellant said she was still trying to rectify her pay. He then asked for and received a copy of the promissory note.

Prior to giving SFC R a copy of the promissory note, appellant changed the first payment due date from "1/15/97" to

"4/15/97" and added the following sentence:  "Due to unexpected expenses incurred on 1/5/97, to the tune of $550.00, to replace starter and battery the monthly payments will have to be delayed until 6/16/97."  When SFC R noticed the changes to the document, he was upset and called appellant.  She responded that there was "nothing wrong with it [the promissory note]" and reiterated that she would pay SFC R, but now not until June.  At trial, the defense conceded that appellant had changed the document.

While deployed in Canada for two months, SFC R did not receive any payments.  He called appellant upon his return, and she said that she still had financial problems.  SFC R did not receive any payments in April, May, or June.  In June, SFC R learned that the vehicle had been left on the side of the road. He then asked appellant for all the legal documents, licensing, and registration, so he could register the car.

On July 1, 1997, SFC R took the promissory note to First Lieutenant (1LT) C, a new legal assistance officer, for advice. The document was dated November 1, 1996.  SFC R showed 1LT C the promissory note and pointed out that appellant had changed the starting date of the payments from January 15, 1997, to April 15, 1997.  SFC R told 1LT C that he did not agree to the change.

After examining the changes on the promissory note,[1] 1LT C "reviewed the elements of the offense of forgery in the Manual for Courts-Martial and determined that the accused may have committed such an offense." He called appellant, but she was unable to talk to him because she was with a client. Later, while talking to her, he thought the best way to help SFC R was to pursue criminal action rather than civil action because she had "committed a crime." He then contacted the trial counsel for appellant's unit. Based on SFC R's conversation with 1LT C, SFC R followed up on the progress of the "criminal law" action.

1LT C, now CPT C, testified that appellant admitted to buying the car and owing the money to SFC R for nearly a year, but was not going to pay. According to CPT C, she told him, "You couldn't get blood from a stone." He also testified that he reviewed the altered promissory note prior to calling appellant.

DISCUSSION

Article 31(b), UCMJ, 10 USC § 831(b), states:

> No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him

---

[1] Appellant was charged under Article 133 for, among other things, unlawfully altering the promissory note. However, the Court of Criminal Appeals excepted this language out of the specification for lack of factual sufficiency, holding that appellant was not legally obligated to execute the promissory note and was not prohibited by law from changing the terms prior to providing SFC R with a copy. 54 MJ at 807.

> that he does not have to make any statement
> regarding the offense of which he is accused
> or suspected and that any statement made by
> him may be used as evidence against him in a
> trial by court-martial.

The court below relied on United States v. Duga, 10 MJ 206 (CMA 1981), in which we applied a two-prong test to determine whether a warning is required :

> [I]n each case it is necessary to determine
> whether (1) a questioner subject to the Code was
> acting in an official capacity in his inquiry or
> only had a personal motivation; and (2) whether
> the person questioned perceived that the inquiry
> involved more than a casual conversation.

Id. at 206.  The court noted that in applying this test,

> Article 31, UCMJ, warnings are not required to be
> given by:  (1) a military doctor, psychiatric
> social worker, or nurse prior to asking questions
> of a patient for medical diagnosis or treatment;
> (2) an in-flight aircraft crew chief prior to
> questioning, for operational reasons, an
> irrational crewman about possible drug use; (3)
> military pay officials questioning a servicemember
> about a pay or allowance entitlement; or (4) a
> negotiator trying to end an armed standoff,
> provided the discussion was truly designed to end
> the standoff, rather than to obtain incriminating
> statements to be used against the suspect at
> trial.  However, military appellate courts have
> also held that military defense counsel may not
> deliberately seek incriminating answers from a
> suspect unrepresented by counsel without first
> giving Article 31, UCMJ, rights warnings.

54 MJ at 802 (footnotes omitted).

But this case is distinguishable.  CPT C, upon being shown the promissory note, suspected forgery and felt appellant had committed a criminal offense.  He did not even recommend SFC R

pursue civil action because he felt criminal action through appellant's prosecutor was the best way to help SFC R. CPT C, using the authority of his position, called appellant to solicit information on the matter. Based on CPT C's testimony, we conclude he was acting as an investigator in pursuing this criminal action. As such, he was required to give an Article 31 warning.

However, in the context of the court-martial, the error was harmless beyond a reasonable doubt, as nearly all of the information secured by CPT C in his conversation with appellant was introduced at trial through independent sources. See generally Murray v. United States, 487 U.S. 533, 537 (1988).

The victim's testimony, documentary evidence, and admissions by appellant establish that SFC R and appellant agreed that she would buy his Jaguar for $8,000. Because she was having financial problems, she agreed to pay $500 a month for eight months and then the remainder of $4,000 in a lump sum. This agreement took place in August 1996, at which time appellant took possession of the vehicle. From August 1996 through June 1997, SFC R tried to collect from appellant, but each time, she indicated that she was having pay problems. Eventually, pursuant to SFC R's request, appellant had a promissory note notarized in November 1996. The defense conceded that after its notarization, appellant changed the

terms of the promissory note.[2] Appellant testified that she eventually left the vehicle damaged on the side of the road. She also never registered the vehicle in her name. While she was claiming to have pay problems, her financial records for those many months were introduced and showed that she was receiving bi-monthly pay, as well as various allowances and loans.

In closing, trial counsel referred to CPT C's testimony that appellant had stated, "You can't get blood from a stone." This argument, however, was de minimis in the context of the case.

## DECISION

This decision of the United States Army Court of Criminal Appeals is affirmed.

---

[2] However, the Court of Criminal Appeals was not persuaded beyond "a reasonable doubt that SFC R did not acquiesce to the 16 June 1997 date for resumption of payments, as reflected in the altered promissory note," and modified the specification accordingly. 54 MJ at 806-07.

United States v. Guyton-Bhatt, No. 01-0386/AR

SULLIVAN, Senior Judge (concurring in the result):

I agree with the Court of Criminal Appeals, which applied all this Court's precedent to the granted issue in this case. See United States v. Swift, 53 MJ 439, 445-46 (2000); United States v. Loukas, 29 MJ 385 (CMA 1990). It said:

> The issue is not whether the questioner is participating in any official questioning, but rather whether the primary focus of the questioning relates to an official law enforcement or disciplinary investigation or inquiry.

United States v. Guyton-Bhatt, 54 MJ 796, 803 (Army Ct. Crim. App. 2001). I would affirm under United States v. Loukas, supra.

I do not believe that United States v. Duga, 10 MJ 206 (CMA 1981), requires that every official conversation start with Article 31 warnings. United States v. Loukas provides a more relevant approach to the instant case. In Loukas, we held a crew chief's questioning of an accused about drug use during a plane flight, even though he may have suspected drug use, was not a law enforcement or disciplinary investigation and, thus, the crew chief was not obligated to warn the soldier of his rights under Article 31, UCMJ. In the instant case, 1LT C was performing a legal assistance duty to try to get appellant to pay his client money for his car. This conversation was official, but it was not a law enforcement or disciplinary function. Therefore, no

United States v. Guyton-Bhatt, No. 01-0386/AR

Article 31 rights warning was required.  See United States v.
Moses, 45 MJ 132 (1996); United States v. Raymond, 38 MJ 136 (CMA
1993); United States v. Loukas, supra; United States v. Fisher,
21 USCMA 223, 44 CMR 277 (1972).


    Finally, I would further note that the service appellate
court indicated that, at some point in the conversation with
appellant, 1LT C questioned him about forgeries.  United States
v. Guyton-Bhatt, supra.  It further stated that at this point,
the conversation may have become disciplinary, but no portions of
that conversation were admitted at trial.  Accordingly, I agree
with the Court of Criminal Appeals that this particular situation
need not be addressed.