UNITED STATES, Appellee

v.

Michael J. MAHONEY, Master Sergeant
U.S. Air Force, Appellant

No. 02-0270

Crim. App. No. 34209

United States Court of Appeals for the Armed Forces

Argued February 25, 2003

Decided June 25, 2003

CRAWFORD, C.J., delivered the opinion of the Court, in
which GIERKE, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant: Major Kyle R. Jacobson (argued); Colonel Beverly
B. Knott and Major Terry L. McElyea (on brief); and Major
Jeffrey A. Vires.

For Appellee:  Major John D. Douglas (argued); Colonel LeEllen
Coacher and Lieutenant Colonel Lance B. Sigmon (on brief); and
Colonel Anthony P. Datillo, Major Jennifer R. Rider, and Captain
Adam Oler.

Amicus Curiae:  Claudia N. McClinton (law student)(argued); Eric
L. Muller, Esq. (supervising attorney) and Heather A. Maddox
(law student) – For the University of North Carolina School of
Law.

Military Judge:  Patrick M. Rosenow

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Mahoney, 02-0270/AF

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his plea, Appellant was convicted by an officer and enlisted panel of wrongfully using cocaine over a 20-day period, in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2000). The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, reduction to senior airman (E-4), and partial forfeiture of pay for six months. The Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. Mahoney, No. ACM 34209 (A.F. Ct. Crim. App. Dec. 13, 2001). We granted review of the following issues:

> I. WHETHER TRIAL COUNSEL FAILED TO ENGAGE IN GOOD FAITH EFFORTS TO OBTAIN AND DISCLOSE DEROGATORY DATA CONCERNING THE GOVERNMENT EXPERT WITNESS FROM FILES AT THE AIR FORCE DRUG TESTING LABORATORY AS REQUIRED BY UNITED STATES V. WILLIAMS, 50 M.J. 436 (C.A.A.F. 1999).
>
> II. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY REFUSING TO ALLOW APPELLATE DEFENSE COUNSEL TO EXAMINE THE POTENTIALLY EXCULPATORY LETTER CONCERNING THE GOVERNMENT EXPERT WHEN GOVERNMENT APPELLATE COUNSEL HAVE REVIEWED THE SAME LETTER.

For the reasons set forth below, we reverse.[1]

---

[1] We heard oral argument in this case at the University of North Carolina School of Law, Chapel Hill, North Carolina, as part of the Court's "Project Outreach." This practice was developed as part of a public awareness program to demonstrate the operation of a Federal Court of Appeals and the quality of the military criminal justice system.

2

FACTS

The charge against Appellant resulted from a random urinalysis conducted on September 20, 1999, at Lackland Air Force Base (AFB), Texas.  Appellant's urine sample tested positive for the presence of cocaine metabolites at a level of 163 nanograms per milliliter (ng/ml).  The sample was then retested, exhibiting cocaine metabolites present at a level of 156 ng/ml.  The Department of Defense has designated 100 ng/ml as the quantitative threshold for a positive test.

The Government's case was based on a random urinalysis, with no other independent evidence of cocaine use.  The defense strategy was to attack the procedural regularity and reliability of the urinalysis.

During Appellant's trial, the Government called Dr. Philip Mobley, the Laboratory Certifying Official at the Air Force Drug Testing Lab, Brooks AFB, Texas, as an expert in chemistry, toxicology, and pharmacology.  The lab examines approximately 30,000 urine samples per month.  One of Dr. Mobley's responsibilities is to review the litigation package compiled for each urine sample -- an assembly of documents relating to the sample's testing and results.  Two of the Government's chief exhibits at trial were the litigation packets relating to Appellant's initial urinalysis and retest, about which trial

counsel extensively questioned Dr. Mobley in order to prove Appellant's drug use.

After the trial, defense counsel learned of the existence of a letter criticizing Dr. Mobley's job performance and questioning the value of his continued employment. The letter was written by Lieutenant Colonel (LtCol) Mark R. Ruppert, command staff judge advocate (SJA) at Peterson AFB, Colorado, to the SJA, 14th Air Force. The letter was prompted in part by Dr. Mobley's testimony in two prior courts-martial, and included the following language:

> My first negative experience with Dr. Mobley was during the general court-martial of US v. SSgt Castro in Aug 98. Dr. Mobley testified for the Government, but the circuit trial counsel and court members gave me unsolicited feedback that his testimony showed an obvious lack of enthusiasm or conviction about the Air Force's drug testing program. In addition to the attitude that he really didn't care much about the program, detracting from the validity of the urinalysis result, he left Peterson AFB while subject to recall, requiring a stipulation of testimony to court members' questions later in the trial.

> . . . Of particular concern to me, as a former circuit trial counsel who has prosecuted many urinalysis cases, was Dr. Mobley's testimony about drug use studies and the value of those studies to forensic toxicologists. . . . [M]y reading [of his testimony] is that he has criticized the value of studies normally used by forensic toxicologists to draw conclusions and render opinions based on certain fact scenarios - to the point he could no longer credibly rely on these studies as an expert witness for the Government. If that is his honestly held opinion, I question why the Air Force would want to employ someone undercutting the value of the studies relied upon by other forensic toxicologists[.]

Given the contrast between Dr. Mobley's positive testimony about the lab processes contributing to Appellant's charge, and his apparently negative testimony in the previous courts-martial, defense counsel questioned the impact of the letter on Dr. Mobley's change of perspective. Accordingly, defense counsel requested that the Brooks AFB legal office provide him with a copy of the letter, along with any associated materials, noting that the letter had not been disclosed despite the defense's pre-trial request for "all information potentially affecting the credibility of the Government's prospective witnesses." The base legal office responded that all materials regarding Dr. Mobley in its possession had been previously provided to the defense, and that the office was unaware of the letter's existence until after receipt of defense counsel's request for it.

After his conviction, Appellant moved for production of the letter and all associated documents on appeal before the Air Force Court of Criminal Appeals. The Air Force Court ordered the Government to provide the letter and attachments for an in camera review. After reviewing the documents, the Air Force Court ordered all documents produced pursuant to its orders to be sealed. The letter was not provided to Appellant.

After considering Appellant's petition for grant of review, this Court ordered that appellate defense counsel be permitted to examine the materials sealed by order of the Air Force Court,

5

United States v. Mahoney, 02-0270/AF

absent the Government's showing of good cause that so doing could be expected to damage the public interest or a protected privacy interest. United States v. Mahoney, 57 M.J. 432 (C.A.A.F. 2002). The Government did not challenge the order in this regard, and appellate defense counsel has since examined the materials originally sealed. Accordingly, Issue II is moot.

## DISCUSSION

The lower court determined that because the Government did not know of the letter until informed by defense counsel after trial, there was "no bad faith on the part of the prosecution," and found that even if the Government did breach its obligation, there was no prejudice. Mahoney, No. ACM 34209, slip op. at 3-4. The court further noted that even assuming error, "[A]ppellant was not materially prejudiced," and "no reasonable probability existed that the result of the proceeding would have been different." Id. at 4. We disagree. The Government's failure to provide the letter to the defense before trial violated Appellant's constitutional right to due process of law. Brady v. Maryland, 373 U.S. 83 (1963).

We note at the outset that even if trial counsel did not know about the letter, it would have become known to him "by the exercise of due diligence." Rule for Courts-Martial 701(a)(2)(B). As the Supreme Court restated in Strickler v. Greene, "the individual prosecutor has a duty to learn of any

6

favorable evidence known to others acting on the government's behalf in this case, including police." 527 U.S. 263, 281 (1999)(quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)). A command SJA wrote the letter to his superior in the legal chain of technical supervision, criticizing the Government's key witness. The letter had been disseminated widely at the Drug Testing Laboratory and was the subject of formal training for "DTL experts." It had been transmitted to various offices in the Air Force legal community. The Government's key witness, Dr. Mobley, was himself aware of the letter, as he wrote a rebuttal to it upon receipt. Thus, appropriate Government inquiry of Dr. Mobley should have led to discovery of the letter.

"The military, like the Federal and state systems, has hierarchical sources of rights," and chief among those sources is the Constitution of the United States. United States v. Lopez, 35 M.J. 35, 39 (C.M.A. 1992). In rendering our decisions, we look to the highest source of authority, "unless a lower source creates rules that are constitutional and provide greater rights for the individual." Id.

The constitutional guarantee of due process requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). Accordingly, the prosecution must disclose to

the defense "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment." Brady, 373 U.S. at 87. "Favorable" evidence under Brady includes "impeachment evidence . . . that, if disclosed and used effectively, . . . may make the difference between conviction and acquittal." United States v. Bagley, 473 U.S. 667, 676 (1985)(citations omitted). However, like other forms of exculpatory evidence, impeachment evidence is "material" to guilt or punishment "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 682. Under the "reasonable probability" standard of materiality, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial." Kyles, 514 U.S. at 434. Therefore, "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Id. (quoting Bagley, 473 U.S. at 678). Failing to disclose such evidence is a due process violation "irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. This constitutional standard controls our analysis of Appellant's case.

United States v. Mahoney, 02-0270/AF

In a prosecution for wrongful use of illegal drugs under Article 112a, "[k]nowledge of the presence of the controlled substance is a required component of [wrongful] use." Manual for Courts-Martial, United States (2002 ed.) Part IV, para. 37.c.(10). If the only evidence of drug use consists of test results identifying the presence of the drug in the accused's body, the government must also introduce expert testimony interpreting the tests or some other lawful substitute. See United States v. Ford, 23 M.J. 331 (C.M.A. 1987); United States v. Murphy, 23 M.J. 310 (C.M.A. 1987); United States v. Harper, 22 M.J. 157 (C.M.A. 1986). Because the expert is not required to evaluate the specific urinalysis test conducted on the sample provided by the accused, the government may select any qualified expert to provide the required testimony. In this case, the Government chose Dr. Mobley.

Dr. Mobley's testimony substantiated the urinalysis process and test results leading to Appellant's court-martial and conviction. During the Government's direct examination, Dr. Mobley reviewed Appellant's two litigation packages in great detail. In so doing, Dr. Mobley legitimized the urine sample's chain of custody, described the screening and confirmation procedures used to detect cocaine metabolites in Appellant's sample, and essentially endorsed the positive results of both the test and retest. Appellant's defense was to attack the

9

procedural regularity of the information contained in the litigation packages -- the very information that Dr. Mobley substantiated through his testimony. Thus, any evidence calling into question Dr. Mobley's credibility would no doubt have been crucial to this defense.

LtCol Ruppert's letter questioned Dr. Mobley's continued employment by the Air Force, noting Dr. Mobley's testimony critical of studies normally relied upon by government experts testifying in support of the Air Force drug testing program. This admonition arguably created a significant motive -- the desire to receive favorable work evaluations and keep his job -- for Dr. Mobley to testify positively about lab procedures and underlying scientific studies in future courts-martial.[2] Cross-examining Dr. Mobley about the letter may have revealed this motive, serving to damage Dr. Mobley's credibility, and thereby enhance the defense's case. In short, the letter's substantial impeachment value undermines confidence in the trial's outcome. See Bagley, 473 U.S. at 682. We therefore hold that the

---

[2] Appellant asserts that the letter eventually was sent to the Drug Testing Laboratory, where a copy of it was given to Dr. Mobley, attached to a staffing sheet. While the staffing sheet does not list Dr. Mobley by name as an addressee, it contains file symbols for nine separate staff agencies involved in the leadership and supervision of the Drug Testing Laboratory, and it recites that, as a result of LtCol Ruppert's complaints, a formal training session was held for "DTL experts." It is a fair inference from the evidence that Dr. Mobley was one of those "DTL experts." Moreover, the Government has not challenged Appellant's assertion that a copy of the letter was given to Dr. Mobley. In the absence of evidence to the contrary, we accept Appellant's assertion as true.

Government's failure to provide the letter to the defense upon the initial discovery request was a constitutional due process violation under Brady. The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.[3]

---

[3] The Appellant's Petition for New Trial is denied as moot.