UNITED STATES, Appellee,

v.

Sergeant Justin S. SHELTON, United
States Army, Appellant.

ARMY 9901201.

U.S. Army Court of Criminal Appeals.

19 Feb. 2004.

For Appellant: Colonel Adele H. Odegard, JA; Major Mary M. McCord, JA (on brief).

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Major Jennifer H. McGee, JA; Captain Janine P. Felsman, JA (on brief).

## OPINION OF THE COURT

HARVEY, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his guilty plea, of indecent acts upon a female under sixteen years of age (three specifications), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority waived automatic forfeitures required by Article 58b, UCMJ, 10 U.S.C. § 858b, for six months and directed payment to appellant's spouse. After the six-month waiver of forfeitures had elapsed, the convening authority approved the sentence as adjudged. This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

## SUMMARY

Appellant's two pretrial motions, which his conditional guilty plea preserved,[1] merit discussion but no relief. First, contrary to appellate defense counsel's assertion, we conclude that a civilian clergyman, Reverend (Rev.) Dennis, did not violate the confidentiality required by Military Rule of Evidence [hereinafter Mil. R. Evid.] 503 and *United States v. Moreno*, 20 M.J. 623 (A.C.M.R. 1985), because Rev. Dennis did not reveal appellant's confession to appellant's spouse.[2] Second, the clergy privilege did not protect appellant's admissions of sexual misconduct with D (his stepdaughter) to Rev. Dennis because appellant's comments were made under the ambit of marriage counseling and not as a formal act of religion or as a matter of conscience. Third, Rev. Dennis had no obligation to advise appellant of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b), and Mil. R. Evid. 305 before questioning him. As such, appellant's subsequent admissions to others were not *improperly* derived from Rev. Dennis' "threat" to reveal appellant's admissions to proper authorities.

As to appellant's discovery motion, we agree with appellate defense counsel that the military judge erroneously denied the defense discovery request for Criminal Investigation Command (CID) Form 28–Rs, agent activity summaries (AAS). In the AAS, CID special agents (SA) included notes about their investigation of appellant's unlawful sexual activity with D and then filed those notes in the CID investigative file pertaining to appellant's charged sexual misconduct. We conclude, however, that these AAS were not material to the defense's preparation for trial.

## CONDITIONAL PRETRIAL AGREEMENT

Appellant's pretrial agreement preserved for appellate review "any adverse determinations made by the military judge of any of the pretrial motions made at [appellant's] court-martial" (AE IV, para. 2b). *See* R.C.M. 910(a)(2).[3] Prior to appellant entering his guilty plea, appellant's trial defense counsel made a motion to suppress "any and

---

1. *See* Rule for Courts–Martial [hereinafter R.C.M.] 910(a)(2).

2. We adopt the military judge's findings of fact as stated in his suppression motion ruling. Like the military judge, we conclude that the testimony of appellant and his spouse is not credible where it conflicts with Rev. Dennis' testimony (*see* Appellate Exhibit (AE) XVI, para. 12). Accordingly, we find that Rev. Dennis did not initiate the interview of appellant's wife by revealing appellant's admissions of misconduct. Instead, we find that appellant, himself, admitted his sex-ual misconduct to his wife, albeit at the urging of Rev. Dennis. We also find that Rev. Dennis did not inform appellant's wife about appellant's sexual fantasies regarding his stepdaughter.

3. We suggest that conditional guilty plea provisions specifically list which pretrial motions are preserved and define terms such as, "any adverse determination." *See United States v. Tarleton*, 47 M.J. 170, 173 (C.A.A.F.1997) (noting conditional guilty plea preserves appellate review of adverse ruling on *specified* pretrial motions).

all evidence seized, collected, and developed as a result of the breach of [appellant's] confidential communications to his pastor" (AE X). *See* Mil. R. Evid. 304(d)(5) (stating that a motion to suppress a confession may be preserved with entry of a conditional guilty plea). Appellant's trial defense counsel also made a discovery motion for the AAS in appellant's CID file (AE II, para. 2).

In litigating appellant's motion to suppress, appellant's trial defense counsel argued that Rev. Dennis' "threat" to reveal appellant's confidential communications to authorities "coerced" appellant into admitting his offenses to CID and others. After making his admission to Rev. Dennis, appellant admitted his misconduct to his wife, a CID special agent, Ms. Doyle (a social worker), and Mr. Comte (a social worker who conducted a psychosexual evaluation of appellant). Trial counsel never specifically stated which of appellant's admissions he intended to offer into evidence.

The discovery motion requested an opportunity for defense counsel to inspect the CID AAS. The military judge denied the defense discovery request, sealed the requested records, and attached them to the record of trial. Based on the lack of emphasis given to the discovery motion at the trial level, the convening authority and staff judge advocate, and the parties at trial, may not all have been aware that appellant's conditional guilty plea preserved the discovery motion. Additionally, when the military judge discussed with appellant which motions were preserved by the guilty plea, the military judge mentioned only one motion—"this privileged communication business" that involved appellant's admissions to Rev. Dennis. The military judge did not specifically mention appellant's subsequent admissions to others or the discovery motion.

"Where a conditional guilty plea is not case dispositive as to either the issue preserved for appeal or as to all of the charges in a case, the military judge should address as part of the providenc[e] inquiry the understanding of the accused and the parties as to

the result of the accused prevailing on appeal." *United States v. Mapes*, 59 M.J. 60, 72 n. 2 (C.A.A.F.2003). In appellant's case, the military judge failed to thoroughly address the parameters of the conditional guilty plea's impact. Appellate government counsel do not assert that either motion is waived by appellant's guilty plea.

We find that appellant's conditional guilty plea preserved both the motion to suppress appellant's statements to Rev. Dennis and evidence consequently developed therefrom, and the discovery motion for the CID AAS. We also assume that trial counsel intended to introduce all of appellant's admissions and that if the defense had succeeded in suppressing any of them, appellant could have withdrawn his guilty plea. *See United States v. Smith*, 56 M.J. 271, 273 (C.A.A.F.2002) ("In the event of a misunderstanding as to a material term in a pretrial agreement, the remedy is either specific performance of the agreement or an opportunity for the accused to withdraw from the plea."); R.C.M. 910(h)(3).

## ADMISSIONS TO CLERGYMEN DENNIS AND VIRGO

### Facts

Appellant kissed his four-year-old stepdaughter, D, on the lips and inserted his tongue into her mouth. D reported this conduct to her mother, who did not seek assistance outside the family. Appellant denied kissing D inappropriately when questioned by his wife. About a month later, while appellant and D were alone in the car together, at appellant's request D kissed appellant's genital area twice on the outside of his pants. Later that same day, appellant's wife asked D why she was behaving oddly. D pointed to her genital area and said, "Daddy pointed and said kiss it." Appellant denied any wrongdoing to his wife; however, his wife did not believe him.

Appellant's wife contacted Rev. Dennis, who was the family pastor and was very close to appellant.[4] She believed that Rev. Dennis

4. Reverend Dennis is a "clergyman," as defined by Mil. R. Evid. 503(b)(1), which provides: "A 'clergyman' is a minister, priest, rabbi, chaplain, or other similar functionary of a religious organization, or an individual reasonably believed to be so by the person consulting the clergyman."

could find out the truth. Appellant's wife had no reason to expect that Rev. Dennis would regard their discussions as confidential. Reverend Dennis had previously told all church members, including appellant and his wife, "that if you come to me with a matter that you want me to—to keep as a confidence, that you have to state that—you have to tell me." Reverend Dennis had also announced to all members of his congregation on various occasions that "by law"[5] he was obligated to report any crime against a child.[6] Further, he explained to his congregation that he had to report such information because otherwise it could damage his own reputation and the reputation of their church.

Appellant met with Rev. Dennis and Rev. Virgo (a pastor in training) at Rev. Dennis' office the following evening after appellant's wife first called Rev. Dennis about her daughter's allegation against appellant. First, they prayed together, just as they did before discussing other secular matters. Then Rev. Dennis began the counseling by saying, "Now, Shelton, something was done in your house. Your wife told me something

and I want to know if you did it because it's serious and you can go to jail for it...." Reverend Dennis asked for the truth, stating, "Christians don't tell lies, so I need to know." Appellant then admitted that he had engaged in sexual misconduct with D.

Reverend Dennis responded to appellant's admissions by stating, "you really need to get your wife ... she needs to hear that from you because you lied to her. You know, you lied to her about it and she wants to know the truth." Appellant agreed that his wife needed to know what he did to D. When Rev. Dennis asked appellant to go home, get his wife, and return to his office to discuss the matter further, appellant complied. Appellant never asked Rev. Dennis or Rev. Virgo to keep his comments in confidence, nor did he seek spiritual guidance or absolution.

Approximately thirty minutes later, appellant returned with his wife. Reverend Dennis started the discussion by telling appellant, "Well, you need to talk to her. Tell her exactly what happened." Appellant responded by telling his wife, "I did it. I did it. I'm

*United States v. Napoleon*, 46 M.J. 279, 285 (C.A.A.F.1997) (applying Mil. R. Evid. 503(b)(1) to "lay minister"). Reverend Dennis served as an ordained pastor for a congregation of the New Testament Christian Church in Washington State. At a previous assignment, appellant lived in a serviceman's home operated by Rev. Dennis. During this period, appellant interacted with Rev. Dennis daily. Appellant and his wife sought and received spiritual, financial, and family counseling from Rev. Dennis over the previous six years, at first separately and then together over the course of their two-year marriage. Typically, before a counseling session appellant and/or his spouse would pray with Rev. Dennis. When Rev. Dennis provided marital counseling to appellant and his wife, he usually obtained information about the problem from appellant or his wife, then he would present the problem to both of them together.

5. Appellant testified that Rev. Dennis told him their church's "bylaws" required him to report sexual abuse; however, Rev. Dennis denied that he made any such statement to appellant. Appellant also said he had never seen a copy of their church's bylaws, and neither party to the litigation proffered a copy of the bylaws into evidence.

6. According to Washington State law on privileged communications, appellant's communications to Rev. Dennis concerning his sexual abuse of D were not privileged unless the communica-

tion constituted a confession according to the religion of the clergy member. WASH. REV. CODE ANN. § 5.60.060(3) (1999); *see State v. Martin,* 137 Wash.2d 774, 975 P.2d 1020, 1026 (1999). Specifically, this statute provides:

A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any confession made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs. WASH. REV. CODE ANN. § 5.60.060(3). In order for the clergy-penitent privilege to apply, "the statements must have been made (1) to a member of the clergy (the necessary relationship); and (2) as a 'confession ... in the course of discipline enjoined by the church' (communication made in the right context). Further, the privilege applies only to confidential communications." *State v. Glenn,* 115 Wash.App. 540, 62 P.3d 921, 924 (2003) (citation omitted), *pet. denied,* 149 Wash.2d 1007, 67 P.3d 1096 (2003). Whether a communication constitutes a "confession" under the Washington State clergy-penitent privilege is based upon "the religion of the clergy member receiving the communication and not by the penitent." *Martin,* 975 P.2d at 1028. However, " '[w]hether a communication is confidential turns on the communicant's reasonable belief that the conversation would remain private.' " *Glenn,* 62 P.3d at 926 (quoting *State v. Martin,* 91 Wash.App. 621, 959 P.2d 152, 158–59 (1998)).

wrong. I did it.... that's not the way I want to be."[7] Appellant did not reveal to his wife the details of his misconduct with D. After appellant's admission, they discussed how this would impact the couple's relationship and family life. Reverend Dennis concluded the meeting, stating that this was a serious matter, appellant could go to jail, and that by law crimes against children had to be reported. Appellant did not respond with surprise, anger, or objection to Rev. Dennis' comments about reporting appellant.

About one week later, Rev. Dennis approached appellant's wife at church and asked about D's welfare and whether she had reported the incident. Appellant's wife had not reported appellant. Reverend Dennis encouraged appellant's wife to report appellant's conduct to authorities, stating, "either you do it or I'll do it."[8] He did not suggest who should be contacted or tell her what to say to authorities. A short time later, appellant's wife reported appellant's misconduct to a Fort Lewis abuse hotline that she found in the telephone book. Ms. Doyle, a social worker, interviewed appellant's wife and then referred the allegation to CID. Appellant waived his rights under Article 31(b), UCMJ, and admitted his offenses to a CID special agent. After the CID interview, appellant met with Ms. Doyle to seek help with his problem and in the course of her interview he made similar admissions. Ms. Doyle then referred appellant to Mr. Comte for a psychosexual evaluation. Appellant made additional, detailed admissions to Mr. Comte about his sexual misconduct with D.

At an Article 39(a), UCMJ, session, the defense made a motion to suppress all of appellant's admissions. The military judge made extensive findings of fact, decided that appellant's initial statement to Rev. Dennis was not privileged, and denied the suppression motion.

7. Because appellant is charged with a crime against a child of his spouse, his admission to his wife is not protected by the husband-wife privilege. Mil. R. Evid. 504(c)(2)(A).

8. Reverend Dennis did not *improperly* advise appellant that authorities had to be notified of

## Discussion

### *Clergy Privilege*

 The party asserting the clergy privilege has the burden of establishing that the communication is privileged under Mil. R. Evid. 503. *See United States v. McCollum,* 58 M.J. 323, 336 (C.A.A.F.2003) (discussing burden under spousal privilege). "A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Id.* at 335 (citing *United States v. McElhaney,* 54 M.J. 120, 132 (C.A.A.F.2000)). "Whether a communication is privileged is a mixed question of fact and law." *Id.* at 335–36; *see also United States v. Coleman,* 26 M.J. 407, 409 (C.M.A.1988). The clergy privilege, like other testimonial privileges that exclude evidence, "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (citation omitted).

First we must determine whether appellant's statements to Rev. Dennis were confidential under the clergy privilege. The Supreme Court has recognized "the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Id.* at 51, 100 S.Ct. 906 (*quoted in United States v. Benner,* 57 M.J. 210, 212 (C.A.A.F.2002), and *Napoleon,* 46 M.J. at 285).

 Military Rule of Evidence 503(a) expressly recognizes the clergy privilege, stating, "A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman or to a clergyman's assistant, if such communication is made either as

appellant's admissions. Even if appellant's communications to Rev. Dennis were confidential under Washington State law, Rev. Dennis was not prohibited from voluntarily reporting appellant's admissions to law enforcement. *See Glenn,* 62 P.3d at 928.

a formal act of religion or as a matter of conscience." *See Benner*, 57 M.J. at 212; *Napoleon*, 46 M.J. at 284. Three requirements must be met for the clergy privilege to apply:

> (1) the communication must be made either as a formal act of religion or as a matter of conscience; (2) it must be made to a clergyman in his capacity as a spiritual advisor or to his assistant in his official capacity; and (3) the communication must be intended to be confidential.

*Moreno*, 20 M.J. at 626.

■ Like the military judge at appellant's trial, we conclude that none of the three *Moreno* prongs for the clergy privilege were established. Appellant sought counseling and advice from Rev. Dennis on a secular matter. He was not seeking absolution or spiritual forgiveness. The communication was in Rev. Dennis' capacity as a marital counselor rather than in his official, religious capacity.[9] The counseling was conducted in a manner similar to previous marital counseling sessions. Finally, appellant did not intend his communication to be confidential, as demonstrated when he brought his wife to see Rev. Dennis and then disclosed his misconduct to her. Appellant's subsequent statements to CID, Ms. Doyle, and Mr. Comte are further demonstrations of his intent to eschew confidentiality.[10] Accordingly, we conclude that appellant's admissions to

Rev. Dennis were not privileged under Mil. R. Evid. 503.

### Rights Advisement under UCMJ art. 31(b)

■ Any reliance on *Benner*, 57 M.J. 210, is misplaced. In *Benner*, our superior court determined that a military chaplain was required to advise a suspect of his Article 31(b), UCMJ, rights before asking him about sexual misconduct with his stepdaughter. *Id.* at 214. The court held that the military chaplain was acting solely as a "military officer" and not as a chaplain when he told Sergeant Benner that he had a duty to report him. *Id.* at 213–14. The facts are very different in appellant's case.

Reverend Dennis was not connected with the military. He was not subject to the UCMJ and was not in an agency relationship with the military. *See United States v. Moreno*, 36 M.J. 107, 114–17 (C.M.A.1992) (finding social worker employed by the State of Texas not required to provide Article 31(b), UCMJ, warnings before questioning service member about child-sexual abuse because the social worker not subject to UCMJ and not agent of military law enforcement). Reverend Dennis was not "participating in an official law enforcement or disciplinary investigation or inquiry." *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F.2000). His primary purpose in questioning appellant was

---

9. *See Napoleon*, 46 M.J. at 285 ("A communication is not privileged, even if made to a clergyman, if it is made for emotional support and consolation rather than as a formal act of religion or as a matter of conscience."); *Coleman*, 26 M.J. at 408–10 (holding that Staff Sergeant Coleman's communications with his father-in-law, (a reverend) about Coleman's sexual abuse of his daughter and its impact on his marriage were not privileged).

10. The clergy privilege is waived if an appellant "voluntarily discloses or consents to disclosure of any significant part of the matter or communication under such circumstances that it would be inappropriate to allow the claim of privilege." Mil. R. Evid. 510(a). Once disclosure has been made, the waiver stands—"even if the disclosure was made without the holder realizing the impact of the disclosure. Since the holder has destroyed the privacy or security afforded by the privilege by disclosure[,] repair cannot be made." STEPHEN A. SALTZBURG ET AL., MILITARY RULES

OF EVIDENCE MANUAL, R. 510 editorial cmt., at 606 (3d ed.1991); *see also, e.g., United States v. Hayes*, 227 F.3d 578, 586 (6th Cir.2000) ("a patient can waive the protections of the psychotherapist/patient privilege by disclosing the substance of therapy sessions to unrelated third parties"); *United States v. Rushatz*, 30 M.J. 525, 536 (A.C.M.R.) (ruling attorney-client privilege waived after accused testified that he had conversations with counsel), *aff'd*, 31 M.J. 450 (C.M.A.1990); *United States v. Crews*, 781 F.2d 826, 831 (10th Cir.1986) (where defendant openly discussed with agent his comment to a nurse, finding "[d]isclosure of his own version of the conversation ... is a waiver of privilege"). In appellant's case, Mr. Comte's report (Prosecution Exhibit 3 for identification), which was not admitted into evidence during the suppression motion, indicates that appellant told Mr. Comte about his admission to Rev. Dennis. Nevertheless, we are not permitted to apply waiver to the clergy privilege issue because this issue was not litigated at trial.

not military discipline or law enforcement.[11] Instead, Rev. Dennis was questioning appellant at the behest of appellant's spouse. His purpose was to assist appellant's spouse, to protect D, and to provide marital or family counseling. Thus, Rev. Dennis was not required to provide Article 31(b), UCMJ, and Mil. R. Evid. 305 rights to appellant before asking appellant about his sexual misconduct with D.

## DEFENSE INSPECTION OF CID AGENT ACTIVITY SUMMARIES (AAS)

### Facts

■ The defense made a timely request to review the CID AAS pertaining to appellant's case. Special Agent Bosse, who was in charge of the Fort Lewis CID office, testified that trial counsel and trial defense counsel were not permitted to review the AAS.[12] He also refused to let the CID brigade judge advocate review the AAS. Special Agent Bosse explained that the AAS did not have anything to do with the actual conduct or outcome of the investigation.[13] He asked the military judge to determine whether the AAS should be released.

Trial counsel did not claim any valid basis for non-disclosure.[14] Instead, he argued that the documents were internal, administrative CID work product focusing primarily on internal supervisory reviews of the case agent's progress on investigative plans.[15] The trial

---

11. *See, e.g., United States v. Payne,* 47 M.J. 37, 43 (C.A.A.F.1997) (Defense Investigative Service civilian agent not instrument of military); *United States v. Moses,* 45 M.J. 132, 135–36 (C.A.A.F. 1996) (Article 31(b) inapplicable to siege or hostage negotiations); *United States v. Bowerman,* 39 M.J. 219, 221 (C.M.A.1994) (pediatrician's questions were for medical diagnosis); *United States v. Raymond,* 38 M.J. 136, 137 (C.M.A. 1993) (Army civilian psychiatric social worker not law enforcement agent); *United States v. Loukas,* 29 M.J. 385, 389 (C.M.A.1990) (crew chief of operational military aircraft not law enforcement official); *cf. United States v. Guyton–Bhatt,* 56 M.J. 484, 487 (C.A.A.F.2002) (legal assistance officer acted as criminal investigator).

12. Trial counsel must exercise due diligence in reviewing not only the evidence in his or her possession, but also that in the possession, control, or custody of other government authorities, to determine the existence of discoverable information. *See United States v. Simmons,* 38 M.J. 376, 381 (C.M.A.1993); *United States v. Williams,* 50 M.J. 436, 441 (C.A.A.F.1999). Trial counsel is required to review "files of law enforcement authorities that have participated in the investigation of the subject matter of the charged offenses." *Id.* Criminal Investigation Command Regulation 195–1, Criminal Investigation Operational Procedures [hereinafter CID Reg. 195–1], para. 7–28e (1 Oct. 1994), states release of the AAS is authorized, "in response to a court order or a ruling by a military judge.... [and] the AAS may be subject to inspection by defense counsel pursuant to a proper discovery request to a trial counsel under Rule for Court-Martial 701." As such, SA Bosse's refusal to permit the trial counsel to examine the AAS in this case was incorrect. *See Williams,* 50 M.J. at 441. (Special Agent Bosse did not mention CID Reg. 195–1 in his testimony and the parties did not offer this provision as an exhibit at appellant's trial.)

13. Special Agent Bosse's statement is incorrect. "The AAS will, in a chronological manner, record investigative, administrative, and supervisory activities materially relevant to a ... criminal investigation." CID Reg. 195–1, para. 7–28b. Additionally, the AAS "may be used to record subjective opinions and impressions made by [CID] personnel regarding a particular case." *Id.* at para. 7–28f.

14. In a typical criminal case, after the investigation has been completed the CID AAS should routinely be available for defense inspection and photocopying. However, prior to such release, trial counsel or a CID official should inspect the AAS because it may contain information that could compromise other related ongoing investigation(s), or contain other sensitive information, such as mental health records. *See, e.g., United States v. Rivers,* 49 M.J. 434, 438 (C.A.A.F.1998) (ruling trial judge properly sealed unrelated AAS). It is inconsistent with the liberal military discovery practice for the government to litigate against release of materials such as those withheld by CID in this case.

15. Contrary to trial counsel's argument, we note that the CID investigative plan may contain information that is helpful to the defense's trial preparation, including undeveloped investigative leads and information not included in the final CID report. Trial defense counsel may discover exculpatory or impeachment evidence from the investigative plan, may independently investigate some undeveloped leads, or may request further investigative action by CID. *See, e.g., Leka v. Portuondo,* 257 F.3d 89, 99–103 (2d Cir.2001) (discussing impact of lack of time for defense to further investigate leads from police investigation).

judge reviewed the documents in camera,[16] determined that all eight AAS pages were not relevant, and sealed them.[17]

At appellate defense counsel's request, we unsealed the CID AAS. Much of the AAS' content relates to the difficulty in obtaining documents, discusses minor corrections to the CID final report, and urges expeditious completion of several leads and the CID final report. In discussing incomplete potential investigative leads, one AAS entry includes the comment, "We'll never get anything from the Pastor, he's got problems of his own." A subsequent entry states, "Pastor Dennis declined to be interviewed." The CID final report, which was dated after both of these entries, indicates that Rev. Dennis was not interviewed by CID.

Appellate defense counsel now assert that Rev. Dennis' credibility as to the suppression motion was critical. The military judge's decision to seal the AAS, without allowing trial defense counsel an opportunity to review, "precluded the defense from more fully developing its case and from asking the obvious questions about Reverend Dennis that knowledge of such a comment would have provoked."

### Discussion

"An appellate court reviews a military judge's decision on a request for discovery for abuse of discretion. Because the determination of materiality is a question of law, we review the military judge's ruling *de novo*." *United States v. Morris*, 52 M.J. 193, 198 (C.A.A.F.1999).

A military accused has a broader right of discovery than that required by the Constitution under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or otherwise available to federal defendants in civilian trials under Federal Rules of Criminal Procedure 12 and 16.[18] Article 46, UCMJ, 10 U.S.C. § 846, provides the primary foundation for the military's broad discovery right, stating, "The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."

Rule for Courts–Martial 701 implements Article 46, UCMJ. It states, "Each party shall have adequate opportunity to prepare its case and equal opportunity to interview witnesses and inspect evidence. No party may unreasonably impede the access of another party to a witness or evidence." R.C.M. 701(e). Furthermore, "Each party is entitled to the production of evidence which is relevant and necessary." R.C.M. 703(f)(1); *see also Abrams*, 50 M.J. at 362; *United States v. Reece*, 25 M.J. 93, 95 (C.M.A.1987).

■ Upon defense request, the government's due diligence requirement extends to "files of law enforcement authorities that have participated in the investigation of the subject matter of the charged offenses." *Kinney*, 56 M.J. at 157 (citing *Williams*, 50 M.J. at 441). Rule for Courts–Martial 701(a)(2) and (5) set forth additional duties

**16.** "Where a conflict arises between the defense search for information and the Government's need to protect information, the appropriate procedure is 'in camera review' by a judge." *Rivers*, 49 M.J. at 437 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 61, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)); *see also* R.C.M. 701(f), (g)(2); Mil. R. Evid. 505, 506. After reviewing the material, the military judge may order that the discovery request be "denied, restricted, or deferred" or may enter an appropriate protective order. R.C.M. 701(g)(2); *see United States v. Abrams*, 50 M.J. 361, 364 (C.A.A.F.1999). Had the military judge exercised this last option, it would have permitted "defense counsel to review the documents under a protective order so that [counsel] could make a more informed proffer and thereby possibly allow the military judge to make a more enlightened decision on the defense motion." *Id.*

**17.** The military judge must seal those records not furnished to counsel, and attach them to the record of trial. *Abrams*, 50 M.J. at 363 (noting that failure to do so may render the record of trial incomplete or non-verbatim, thus requiring a remand); *see Rivers*, 49 M.J. at 437.

**18.** *See United States v. Pomarleau*, 57 M.J. 351, 359–60 (C.A.A.F.2002); *United States v. Kinney*, 56 M.J. 156, 156–57 (C.A.A.F.2001) (interlocutory order); *United States v. Eshalomi*, 23 M.J. 12, 24 (C.M.A.1986); *cf. United States v. Ruiz*, 536 U.S. 622, 625, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (holding Fifth and Sixth Amendments do not require federal prosecutors "before entering into a binding plea agreement with a criminal defendant, to disclose 'impeachment information' relating to any informants or other witnesses'" (citation omitted)).

concerning disclosure of defense requested information. This includes permitting defense inspection of any documents in the "possession, custody, or control of military authorities, and which are material to the preparation of the defense." R.C.M. 701(a)(2)(A). With respect to exculpatory evidence, R.C.M. 701(a)(6) provides, as follows:

> [T]rial counsel shall, as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to: [ ] Negate the guilt of the accused of an offense charged; [ ] Reduce the degree of guilt of the accused of an offense charged; or [ ] Reduce the punishment.

■ In appellant's case, appellate defense counsel assert that the sealed AAS entry stating that Rev. Dennis had "problems of his own" is relevant. Appellate defense counsel argue that the comment implies the existence of derogatory information that could have possibly been used to impeach Rev. Dennis' credibility. Information that would impeach Rev. Dennis' credibility is relevant, *see* Mil. R. Evid. 401, and discoverable upon defense request. *See United States v. Green*, 37 M.J. 88, 89–90 (C.M.A.), *corrected by* 38 M.J. 175 (C.M.A.1993); R.C.M. 703(f)(1) discussion. Even assuming that the denied material was relevant and would have impeached Rev. Dennis' credibility, this determination does not end our inquiry.

"The key question when discovery is denied is whether the information or evidence that was not disclosed was 'material to the preparation of the defense.'" *Morris*, 52 M.J. at 197 (quoting R.C.M. 701(a)(2)(B)); *see United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Materiality of impeachment evidence is established "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Morris*, 52 M.J. at 197 (inner quotation marks and citations omitted); *see also Strickler v. Greene*, 527 U.S.

263, 290, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *United States v. Mahoney*, 58 M.J. 346, 349 (C.A.A.F.2003) (holding prosecution's failure to disclose a letter impeaching expert witness was reversible error). A reasonable probability of a different result exists when evidentiary suppression "undermines confidence in the outcome of the trial." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)) (inner quotation marks omitted). "In applying the materiality test, we give the benefit of any reasonable doubt to the military accused." *Morris*, 52 M.J. at 197 (inner quotation marks and citation omitted).

We recognize that our assessment of materiality and prejudice is hampered by the absence of a contested trial. Nevertheless, we find no reasonable probability that defense discovery of the cryptic comment in the AAS at trial would have resulted in additional impeachment evidence, rendering Rev. Dennis unbelievable in the military judge's estimation. *See United States v. Stone*, 40 M.J. 420, 424 (C.M.A.1994); *Green*, 37 M.J. at 90; *United States v. Watson*, 31 M.J. 49, 54–55 (C.M.A.1990). Furthermore, appellate defense counsel had ample opportunity after this court's release of the AAS to explore the impeachment of Rev. Dennis, and they have not presented any such new information to this court. Accordingly, based on the record before us, we refuse to speculate about what additional information might have been developed by the defense from the AAS entry stating Rev. Dennis had "problems of his own." *See generally United States v. Briggs*, 48 M.J. 143, 144 (C.A.A.F.1998).

Although we apply an expansive right to discovery under Article 46, UCMJ, and R.C.M. 701,[19] we conclude the military judge's erroneous failure to release the AAS was not an abuse of discretion because the summaries were not material to defense preparation. *See Green*, 37 M.J. at 90, and *United States v. Figueroa*, 55 M.J. 525, 530–31 (A.F.Ct.Crim.App.2001) (both holding that

19. *See Kinney*, 56 M.J. at 157; *United States v. Adens*, 56 M.J. 724, 731–33 (Army Ct.Crim.App. 2002).

trial counsel's failure to disclose was non-material error).

## CONCLUSION

We have considered appellant's other assignments of error and the matters appellant has asserted under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge BARTO and Judge SCHENCK concur.