UNITED STATES, Appellee,

v.

Glenn M. COLEMAN, Staff Sergeant,
U.S. Army, Appellant.

No. 57,912.

CM 449162.

U.S. Court of Military Appeals.

Sept. 19, 1988.

For Appellant: *Captain Donna L. Wilkins* (argued); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Major Kathleen A. VanderBoom, Captain Gregory B. Upton* (on brief); *Lieutenant Colonel Paul J. Luedtke.*

For Appellee: *Captain Anne E. Ehrsam* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Gary L. Hausken* (on brief); *Major Byron J. Braun* and *Captain Vito A. Clementi.*

*Opinion of the Court*

COX, Judge:

Appellant was tried at Fort Devens, Massachusetts, before a general court-martial composed of officer and enlisted members. Contrary to his pleas, he was found guilty of committing indecent acts upon his 9–year-old daughter, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement for 4 years, forfeiture of $100.00 pay per month for 2 years, and reduction to the lowest enlisted pay grade. The convening authority approved the sentence, and the Court of Military Review affirmed in a memorandum opinion.

We granted review to consider:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN ALLOWING A CLERGYMAN TO TESTIFY OVER APPELLANT'S OBJECTION THAT HIS COMMUNICATION TO THE CLERGYMAN WAS PRIVILEGED.

This case is like many we have seen involving sexual abuse and molestation of children. The victim, appellant's daughter, G, testified that appellant had touched and kissed her in an offensive manner on several occasions.[1] Using an anatomically-de-

---

1. Her specific words were: "He took his finger and stick [sic] it up my vagina," and "[h]e'd stick his tongue in my mouth ...—his tongue went past my teeth."

picted, female doll, she gave the court members a very graphic demonstration of the acts appellant allegedly had committed upon her person. Her testimony was corroborated by her mother, who testified that when she "asked ... [appellant] if he did what ... [G] said he did," his answer had been, "Yes, I guess I've overstepped my boundaries as a father."

The granted issue arises out of the testimony of Reverend Claude Lawson who, likewise, testified that appellant had admitted he had taken "liberties with ... [his] daughter." In addition to being a clergyman, Reverend Lawson is appellant's father-in-law and the grandfather of the victim.

Appellant asserts that his conversations with Reverend Lawson should have been protected from disclosure because of the clergyman-penitent privilege recognized by Mil.R.Evid. 503.[2] The issue arose as follows.

Trial counsel called Reverend Lawson as a witness for the prosecution. Before allowing him to testify, the military judge recognized "a potential problem" and inquired at side-bar if "both sides" were "satisfied that there ... [was] no issue of privilege with regard to this witness." He then conducted a session concerning the evidentiary question *outside* the presence of the members. Art. 39(a), UCMJ, 10 U.S.C. § 839(a).

Appellant claimed Reverend Lawson's testimony was barred by the privilege and

objected thereto. Reverend Lawson was called as a witness and testified as follows:

> I received a phone call from Sergeant Coleman, and, ..., he said to me—... Dad, can you help me, my marriage is falling apart, and knowing what I had known—my daughter had come from Michigan, ... and she had told me about the alleged incident, and ... I was upset and I'm sure that ... [appellant] was upset ... the whole family was upset, and I said, "Son, is there any wonder that your marriage is falling apart? Is it true that you took liberties with your daughter?" He said, "Yes, Dad, and I feel like a dog." And that, basically was the end of that conversation, and he said, "to pray for me" and I said, "I will," and that's basically what was said.

Reverend Lawson also stated that appellant was not "a member of" his church, and he could not recall if appellant had "ever participated in any Sacraments of" his church. He made it clear, however, that his church did not "have a doctrine of confession. ... [P]eople ... come to the altar and confess, but they don't confess to" him.

Appellant also testified on the issue, maintaining that the reason he had called his father-in-law was "[t]o get prayer for my marriage and everything, the problems we were having, solely as a Pastor."

When the side-bar was completed, the military judge stated:

**2.** Mil.R.Evid. 503, Manual for Courts-Martial, United States, 1984, provides:

Communications to Clergy

(a) *General rule of privilege.* A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman or to a clergyman's assistant, if such communication is made either as a formal act of religion or as a matter of conscience.

(b) *Definitions.* As used in this rule:

(1) A "clergyman" is a minister, priest, rabbi, chaplain, or other similar functionary of a religious organization, or an individual reasonably believed to be so by the person consulting the clergyman.

(2) A communication is "confidential" if made to a clergyman in the clergyman's capaci-

ty as a spiritual adviser or to a clergyman's assistant in the assistant's official capacity and is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the purpose of the communication or to those reasonably necessary for the transmission of the communication.

(c) *Who may claim the privilege.* The privilege may be claimed by the person, by the guardian, or conservator, or by a personal representative if the person is deceased. The clergyman or clergyman's assistant who received the communication may claim the privilege on behalf of the person. The authority of the clergyman or clergyman's assistant to do so is presumed in the absence of evidence to the contrary.

With regard to the defense's objection to the testimony of Reverend Lawson, I would rule as follows:

I find Reverend Lawson to be a clergyman, as defined in M.R.E. 503(b)(1), and I find the accused and Reverend Lawson to have been members of the same or similar churches at the time of the alleged conversation between them.

I find the statement made by the accused in response to Reverend Lawson's question was not a "formal act of religion" nor was it made "as a matter of conscience."

I find that the accused did not perceive the communications to have been made to the clergyman in his capacity as spiritual adviser, as evidenced by his repeated use of the term "Dad" throughout the conversation.

In view of the obvious difference in the witness' interest in the case, I find the testimony of Reverend Lawson to be more persuasive than that of the accused; and, therefore, the objection to the testimony of Reverend Lawson is denied. ... I'd like to have the court members come back in and present the testimony of Reverend Lawson ...

After the members returned to the courtroom, Reverend Lawson repeated his testimony before them.

On appeal, the Court of Military Review held:

Having examined the testimony in the record of trial and exercising our authority under Article 66(c), UCMJ, we find as fact: (1) The communication was not made as a formal act of religion or as a matter of conscience; (2) it was not made to Reverend L in his capacity as a spiritual adviser; and, (3) it was not intended to be confidential. *See* Mil.R.Evid. 503;

*United States v. Moreno*, 20 M.J. 623, 626 (A.C.M.R.1985).

Unpub. op. at 3.

The Court of Military Review, in concluding that in any event, if the communication was privileged, its admission was harmless error, stated:

Competent evidence, independent of the communication, overwhelmingly established appellant's guilt of the offense as charged. The victim, appellant's daughter, using an anatomically correct doll, testified clearly, convincingly, and in detail about the indecent acts committed on her. In addition, appellant's wife testified he admitted his misconduct to her when she confronted him about the allegation. That communication took place prior to his conversation with Reverend L. Appellant's efforts to attack the credibility of his daughter and his wife at trial were weak and incredible.

Unpub. op. at 3.

 The question of whether a privilege exists is a mixed question of law and fact, and, therefore, we are not bound by the decision below, regardless of how the Court of Military Review characterized its holding. *United States v. Benson*, 3 U.S. C.M.A. 351, 12 C.M.R. 107 (1953). We do, nevertheless, agree with the Court of Military Review. The threshold for claiming the privilege is that "such communication is made either as a formal act of religion or as a matter of conscience." Mil.R.Evid. 503(a). As was found by both the military judge and the Court of Military Review, neither of these two elements is present in the record before us.

Military law is not insensitive to the needs of servicemembers for chaplains and spiritual guidance, and it has long recognized the "penitent and clergyman" privilege. *See* para. 151(b)(2), Manual for Courts-Martial, United States, 1969 (Revised edition) and 1951; para. 137b, Manual for Courts-Martial, U.S. Army, 1949.[3]

---

**3.** For history buffs, it is interesting to note that Colonel Winthrop suggested in his learned work on military law that communications to clergymen were not privileged. W. Winthrop, *Military Law and Precedents* 331–32 (2d ed. 1920 reprint). The Manuals for Courts-Martial, U.S. Army, 1917, 1920, and 1928, were all silent as to the clergyman-penitent privilege, as was Naval Courts and Boards, 1937, although other privileged communications were recognized. The Drafters' Analysis to Mil.R.Evid. 503, App. 22, 1984 Manual, *supra*, refers only to paragraph

The Supreme Court has said the "privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d. 186 (1980). Indeed, many states have written the privilege into their particular state statutes.[4] Notwithstanding the importance of the privilege to an orderly society, none of the reasons for its applicability is present here. While it seems certain that appellant was seeking help and consolation

151(*b*)(2), Manual for Courts-Martial, United States, 1969 (Revised edition). We have not looked into the matter any deeper to see the forces which moved its inclusion into military law.

**4.** An interesting comparison of state statutes governing the priest-penitent privilege can be found

from his father-in-law, for the reasons stated we are satisfied that the military judge and the Court of Military Review were correct in finding the telephone conversation was outside the privilege.

We have examined the entire record of trial and have found no error which "materially prejudices the substantial rights of" appellant. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge SULLIVAN concur.

in Reese, *Confidential Communications to the Clergy,* 24 Ohio St.L.J. 55 (1963). Also, for an examination of communications regarding clergymen's assistants: *See Catholic Sisters, Irregularly Ordained Women and the Clergy-Penitent Privilege,* 9 U.Cal.Davis L.Rev. 523 (1976).