Chief Judge GIERKE
delivered the opinion of the Court.
In the military justice system, the clergy privilege is “[o]ne of the most sacred privileges.”[1] This privilege “ ‘recognizes the human need to disclose to a spiritual counsel- or, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return.’ ”[2] Military Rule of Evidence (M.R.E.) 503 allows a person to prevent disclosure of a qualified confidential communication to a member of the clergy. Specifically, the clergy privilege allows an accused “to prevent another from disclosing a confidential communication by the [accused] to a clergyman or to a clergyman’s assistant, if such communication is made either as a formal act of religion or as a matter of conscience.”[3]
Appellant asserts that the military judge erred by denying the defense motion to suppress the evidence arising from Appellant’s communications with his pastor, Reverend (Rev.) Ronnie Dennis, because these communications were within the clergy privilege. For the reasons explained below, we agree with Appellant that his communications to Rev. Dennis were privileged and that Appellant should have been able to prevent disclosure of them.
We evaluate the impact of this error in the context of Appellant’s conditional guilty plea, entered pursuant to Rule for Courts-Martial (R.C.M.) 910(a)(2). Consistent with this rule, the pretrial agreement establishes that Appellant reserved the right to withdraw his guilty plea if he prevailed on appeal in asserting that the military judge erred in denying the defense motion to suppress. As we conclude that the military judge erred and Appellant has prevailed on appeal on the clergy privilege issue, we afford Appellant the right to withdraw his guilty plea.[4]
*34 BACKGROUND[5]
Over a period of several months, the four-year-old stepdaughter of Appellant made ambiguous statements and exhibited unusual behavior that raised concerns in Appellant’s wife about Appellant’s possible improper sexual activity with her daughter. On June 6, 1999, the child told her mother of specific sexual contact with Appellant resulting from Appellant instructing her to Mss Mm in the groin area. Appellant’s wife questioned Appellant about his interaction with his stepdaughter. Appellant denied any impropriety.
But Appellant’s wife remained concerned, and she called their family pastor, Rev. Dennis, to discuss her suspicions that Appellant may have sexually abused his stepdaughter. Rev. Dennis was a civilian, ordained Protestant minister, and head minister at the New Testament Christian Church. Appellant and his wife had been attending this church for approximately two years, but they had known Rev. Dennis since 1993. They had met Rev. Dennis during a previous assignment, and he had provided counseling and assistance on a variety of subjects, including family finances, budgeting, and other personal family matters. Rev. Dennis agreed to meet with Appellant to discuss this serious allegation of sexual abuse. As a result, Appellant’s wife told him to go to the pastor’s office at their church the following evening to speak to Rev. Dennis.
When Appellant arrived at the church office for his appointment, another pastor, Rev. Virgo, was waiting with Rev. Dennis. In a private conference, Appellant met with both pastors, but Rev. Dennis exclusively controlled the counseling session. Rev. Virgo was present because it was the church custom to have another person present during this type of counseling. Appellant’s contact with the two pastors began with one of them saying a brief prayer asking for God’s wisdom and guidance in counseling before the session began.
Rev. Dennis testified that he then said to Appellant, ‘Tour wife told me something and I want to know if you did it because it’s serious and you can go to jail for it....” Rev. Dennis also told Appellant, ‘Tou claim to be a Christian, Christians don’t tell lies, so I need to know.” Appellant claims that Rev. Dennis told him to tell the truth because God would judge him for lying but would have mercy on him if he told the truth. Despite these different versions of what Rev. Dennis said, there is no disagreement that Appellant confessed to sexual abuse. But the record does not reveal the specifics of Appellant’s admission of child sexual abuse. Rev. Den *35 nis recalled Appellant lamenting, “I believe it’s too late. I don’t think God can help me any longer.” Rev. Dennis consoled Appellant by assuring him, “God can help you with this.”
After Appellant regained his composure, Rev. Dennis asked Appellant to get his wife and bring her to join them. Rev. Dennis assured him that there was still hope to work through this crisis but that Appellant needed to start by telling the truth. Appellant went to his house and immediately drove his wife to the church office.
There Appellant and his wife joined Rev. Dennis and Rev. Virgo. Appellant claimed that he sat silently while Rev. Dennis told Appellant’s wife that Appellant had done as she suspected. But Rev. Dennis did not say expressly that Appellant had molested his stepdaughter or give any details. Rev. Dennis testified that Appellant told his wife, “I did it. I did it. I’m wrong. I did it.”
At the conclusion of the consultation, Rev. Dennis told Appellant and his wife that the laws of Washington state required that he report the child sexual abuse. It does not appear in the record that Rev. Dennis ever made this report.[6]
A couple of weeks after Appellant’s counseling session with Rev. Dennis, Appellant’s wife saw Rev. Dennis at church. Rev. Dennis told her that she should report the child sexual abuse and that he would report it if she did not. Eventually, Appellant’s wife contacted Ms. Sandi Doyle, a social worker, and told Ms. Doyle about her daughter’s accusations. Investigation into this case continued with involvement of the Criminal Investigation Division (CID). Appellant complied with an order to report to the CID office. After being properly advised of his rights, Appellant told an investigator essentially the same thing he had told Rev. Dennis — that he had inappropriate contact with his stepdaughter. But CID’s contact with
Rev. Dennis was initially futile as Rev. Dennis refused to speak to Ms. Doyle or CID without the express written consent of Appellant or his wife. Rev. Dennis never provided a pretrial statement to CID. As the investigation continued, Appellant made incriminating statements to Ms. Doyle and later to a psychotherapist, Mr. Michael Comte. In the latter statement, Appellant presented a detailed explanation of his sexual interest in his stepdaughter. The investigation eventually resulted in Appellant being charged with three specifications of indecent acts upon his minor stepdaughter.
Prior to the commencement of the court-martial, Appellant negotiated a pretrial agreement in which he agreed to conditionally plead guilty to all three offenses. The term of the pretrial agreement most relevant to this appeal permitted Appellant to attempt to exclude from the court-martial any evidence relating to Appellant’s conversation with his pastors and to preserve this issue for appellate review. It provided in part:
[2]b. I understand that this is a conditional guilty plea under R.C.M. 910(a)(2), and that I reserve the right to appeal any adverse determinations made by the military judge of any of the pretrial motions made at my court-martial. I understand that if I prevail on further review or appeal, I shall be allowed to withdraw my pleas of guilty.
When the court-martial began, Appellant took action to preserve issues for appellate review and attempted to avail himself of this term in the pretrial agreement. Trial defense counsel made pretrial motions[7] including a motion to suppress evidence resulting from his confidential communication to Rev. Dennis.
After an evidentiary hearing where Appellant and Rev. Dennis presented conflicting testimony regarding the nature and substance of the conference at the church, the *36 military judge denied the defense motion and explained his ruling on the record. Almost nine months later, on September 5, 2000, the day he authenticated the record of trial, the military judge made his formal written ruling on the motion to suppress.
In both the record of his oral explanation and the later written ruling, the military judge stated that he chose to believe Rev. Dennis’s recollection of events rather than Appellant’s. It is the testimony of Rev. Dennis that is the primary basis for the military judge’s finding of historical facts. Reflecting the testimony of Rev. Dennis, the military judge’s historical findings of fact detailed the religious context in which Appellant made his statements. This included the following: Appellant made the statements to his pastor, the counseling session began with prayer, and “[t]his church was a focal point in the Sheltons[’] social, spiritual, and community lives.”
In his conclusions, the military judge made four distinct points: (1) that Appellant did not speak to Rev. Dennis in his capacity as a clergyman or spiritual advisor; (2) that Appellant did not intend his statement to Rev. Dennis be confidential; (3) that Appellant did not make his statements as a matter of conscience; and (4) that Appellant did not make his statements as a formal act of religion.
After losing his pretrial motions, Appellant pled guilty under the provisions of the pretrial agreement. During the Care inquiry,[8] the military judge reviewed the terms of the pretrial agreement with Appellant and specifically addressed Appellant’s conditional guilty plea. The military judge offered the following illustration of the effect of the conditional guilty plea provision:
So let’s say that the appellate court says that I’m all wrong about this privilege business, the motion, in other words, that we discussed yesterday, and they say that I am wrong and it should be reversed, then by the terms of this paragraph 2a — 2b, I should say, when you’ve got — or I get that notice, if it ever comes, then you can say hey, I changed my mind, I want to plead [not] guilty and withdraw your plea of guilty.
Satisfied that Appellant’s plea was provident, the military judge accepted Appellant’s guilty plea, found him guilty of all offenses, and later sentenced Appellant for his offenses.
DISCUSSION
1. Applicability of the clergy privilege
Appellant claims that he confided in Rev. Dennis, his spiritual advisor, searching for help and solace for his abusive behavior of his stepdaughter. He alleges that the military judge erred by admitting testimony related to his disclosures to Rev. Dennis in violation of the clergy privilege of M.R.E. 503. Since Appellant is attempting to claim the clergy privilege, he has the burden of establishing that his conversation was privileged under M.R.E. 503.[9]
In the military justice system, the clergy privilege has been recognized since at least 1949.[10] But the present privilege in M.R.E. 503 was adopted in 1980 in conjunction with the President’s issuance of the Military Rules of Evidence.[11]
This Court has recognized the importance of the clergy privilege stating, “Military law is not insensitive to the needs of servicemembers for [clergy] and spiritual guidance, and it has long recognized the ‘penitent and clergyman’ privilege.”[12] The privilege reflects respect for the traditional confidential nature *37 of relations between clergy and servicemembers.[13]
M.R.E. 503(a) expressly recognizes a clergy privilege and provides: “A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman or to a clergyman’s assistant, if such communication is made either as a formal act of religion or as a matter of conscience.”[14] M.R.E. 503(e) broadly extends the privilege to allow either the communicant or the clergy member to claim the privilege.[15]
This Court has addressed the evidentiary foundation of this privilege in a variety of cases.[16] M.R.E. 503 has three components pertinent to the present case: (1) the communication must be made either as a formal act of religion or as a matter of conscience; (2) it must be made to a clergyman in his capacity as a spiritual advisor or to his assistant in his official capacity; and (3) the communication must be intended to be confidential. We must evaluate whether Appellant has established these three criteria necessary to claim the privilege.
The focus of our analysis is the ruling of the military judge. When reviewing a decision of a Court of Criminal Appeals on a military judge’s ruling, “we typically have pierced through that intermediate level” and examined the military judge’s ruling, then decided whether the Court of Criminal Appeals was right or wrong in its examination of the military judge’s ruling.[17]
We review a military judge’s decision to admit evidence for an abuse of discretion.[18] Whether a communication is privileged is a mixed question of fact and law.[19] We will give the military judge’s findings of fact deference, reversing such findings only if they are clearly erroneous, while we review the legal conclusions de novo.[20]
Although the clergy privilege, like all privileges must be strictly construed,[21] it is legal error when the privilege is misconstrued.[22] Applying the three criteria of M.R.E. 503, we conclude that the military judge erred as a matter of law in concluding that Appellant’s communication with Rev. Dennis was not a matter of conscience.
Our application of the law to the facts of this case begins with the threshold for claiming the privilege, that is, whether Appellant confided in Rev. Dennis “either as a formal act of religion or as a matter of conscience.”[23] For purpose of our analysis, we will assume that Appellant did not confess “as a formal act of religion.” But this concept is distinguishable from whether Appel *38 lant confessed as “a matter of conscience.”[24] An “act of religion” must comply with the particular tenets of a faith, but a “matter of conscience” is privately held within a person.
The military judge erred by not focusing on the religious context under which Appellant’s statements were made. Most importantly, Rev. Dennis used the authority of his religion to induce Appellant to confess. Rev. Dennis testified about the religious atmosphere surrounding their conversations. Rev. Dennis testified that he began the counseling session with a prayer to ask for God’s guidance. Rev. Dennis admitted that he told Appellant, “You claim to be a Christian, Christians don’t tell lies____” Also, at the end of their meeting before Appellant’s wife joined them, Rev. Dennis told Appellant that “God can help you with this.” Rev. Dennis testified that “[Appellant’s] attitude has always been one that has accepted his guilt and what he has done and [he was] really crying out for help.” Rev. Dennis further explained that he was trying to give Appellant “some kind of avenue of hope as a pastor in counseling so that he would not hurt himself.”
These facts establish the religious context under which Appellant made his statements to Rev. Dennis. These circumstances burdened Appellant’s conscience, and following the advice of his pastor, Rev. Dennis, Appellant confessed. We note that the past secular discussion between Appellant and Rev. Dennis related to financing, budgeting, and family matters. But there is nothing in the record to establish that these counseling sessions were as spiritually charged as the counseling involved in the present case. The mere prior counseling contact between Rev. Dennis and Appellant on other matters does not preclude a conclusion that, in the present instance, Appellant’s communication with Rev. Dennis was a matter of conscience. Accordingly, we conclude that the military judge erred in failing to find that Appellant confessed to Rev. Dennis as a matter of conscience.
We further hold that the communication was “made to a clergyman in his capacity as a spiritual advisor” as required by M.R.E. 503. Respecting all the faiths in our increasing pluralistic society, this Court has recognized that the scope of privileged protection in M.R.E. 503 is a large circle. We have stated:
[M.R.E.] 503(b)(1) defines “clergyman” as “a minister, priest, rabbi, chaplain, or other similar functionary of a religious organization, or an individual reasonably believed to be so by the person consulting the clergyman.” [M.R.E.] 503 is similar to proposed Fed.R.Evid. 506, which was not adopted. The Advisory Committee Note on the proposed federal rule indicates that “clergyman” was intended to mean a person “regularly engaged in activities conforming at least in a general way with those of a Catholic priest, Jewish rabbi, or minister of an established Protestant denomination.”[25]
There is no dispute between the parties that Rev. Dennis qualifies as a “clergyman” under M.R.E. 503(b)(1), as he is an ordained minister and head pastor of the New Testament Christian Church. Appellant attended Rev. Dennis’s church for approximately two years, recognized him as his pastor, and talked to him at the church in his capacity as a clergyman. Again, we consider the circumstances of Rev. Dennis beginning the meeting with prayer, the fact that the counseling session occurred at the church, and the religious atmosphere and spiritual language of the meeting as critical facts establishing that Appellant’s communication with Rev. Dennis was in the clergy’s official capacity.
Finally, the record establishes that Appellant intended his communications to be confidential. This Court focuses on Appel *39 lant to make this determination.[26] At the motion hearing, Appellant asserted that he intended that the conversation remain confidential. He testified that he did not want his wife to know what he revealed to Rev. Dennis. Appellant explained that since Rev. Dennis was “the spiritual leader of our church and ... he wanted to talk to my wife, I — I didn’t see why I should tell him no, not to meet with her.”
We acknowledge that Rev. Dennis testified that he had told his congregation that he would not keep confidential confessional communications regarding child abuse. But whether or not Appellant was present when Rev. Dennis made these statements is not as important as the religious context established by Appellant’s private meetings with Rev. Dennis. The specific circumstances of these private meetings support Appellant’s reasonable expectation that the counseling was indeed confidential.
Moreover, Rev. Dennis told Appellant that it was important that his wife be present and that Appellant needed to tell his wife because he had lied to her. Rev. Dennis also instructed Appellant, ‘You need to stand up and tell her the truth of what happened.” Appellant followed the advice of his spiritual advisor. Since Rev. Dennis believed that Appellant’s wife’s presence was necessary for his redemption, Appellant brought his wife into the room where she learned that Appellant had been sexually abusing his stepdaughter. And, “[a]s is the ease with the attorney-client privilege, the presence of third parties, [which is] essential to and in furtherance of the communication, does not vitiate the clergy-communicant privilege.”[27]
We need not presently define the precise parameters of preserving this privileged communication made in the presence of third parties. It is sufficient here to conclude that this privilege is preserved where there is a “relationship by blood or marriage” as well as a “commonality of interest” between the accused and the third party present during the privileged communications.[28] Both these factors are present here as the third party present was Appellant’s wife who had played the pivotal role of sending Appellant to Rev. Dennis in the first instance.
Finally, we observe there was only a short break in time between Appellant’s first statement to Rev. Dennis and Appellant’s second statement, made in the presence of Appellant’s wife. We view the time for Appellant to obtain his wife and return to the church and continue his conversation with Rev. Dennis so short that it did not affect Appellant’s expectation of confidentiality in the counseling session with his pastor.
In summary, we conclude that the record establishes the three-prong evidentiary foundation for the clergy privilege in this case. Appellant communicated his guilt to Rev. Dennis, Appellant’s pastor. Appellant’s communication was made as a matter of conscience, and Appellant intended their communication to remain confidential. Because M.R.E. 503 grants Appellant a right to keep this privileged conversation confidential, we conclude that the military judge abused his discretion by ruling that Appellant’s statements to his pastor were not privileged and would be otherwise admissible evidence.
As we conclude that the military judge made an evidentiary error, normally we would now address whether this error was harmless.[29] In doing so we would consider other evidence that implicated Appellant, including his incriminating statements to both the social worker, Ms. Doyle, and the psychotherapist, Mr. Comte. But that avenue of analysis is not presently open because of the context of this error in the trial proceedings. We now address the impact of this error on Appellant’s conditional guilty plea.
*40 2. Impact of the error regarding privilege on Appellant’s conditional guilty plea
R.C.M. 910(a)(2) permits an accused to enter a conditional plea of guilty, which reserves “the right, on further review or appeal, to review of the adverse determination of any specified pretrial motion.”
Consistent with the procedural rule, Appellant’s pretrial guilty plea agreement specifically reserved “the right to appeal any adverse determinations made by the military judge of any of the pretrial motions made at [his] court-martial.”
Appellant availed himself of the R.C.M. 910(a)(2) procedural rule and the express terms of his pretrial agreement. Appellant conditionally pled guilty to the charges. By doing so, Appellant preserved his right to challenge the ruling of the military judge notwithstanding his guilty plea.
R.C.M. 910(a)(2) also states, “If the accused prevails on further review or appeal, the accused shall be allowed to withdraw the plea of guilty.” Reflecting this provision, the pretrial agreement further stated, “I [Appellant] understand that if I prevail on further review or appeal, I shall be allowed to withdraw my pleas of guilty.”
The military judge’s denial of the defense’s motion to suppress Rev. Dennis’s statements was a determination adverse to the defense and therefore covered by the terms of the conditional guilty plea.[30] As we conclude that the military judge erred in denying the defense’s motion, Appellant is entitled to the opportunity to withdraw his plea of guilty.[31] This is the only appropriate remedy available to address the military judge’s erroneous evidentiary ruling in the context of a conditional guilty plea. In United States v. Barror[32] we explained that the necessity of this remedy arises from the government relying on an appellant’s conditional guilty plea to satisfy its burden:
Of course in the instant case, since appellant candidly confessed his guilt to the offense after losing the motion, we are not, ultimately, concerned about the reliability of [the victim]’s statement. Rather, what is at stake is the ability of an accused to put the Government to its burden of proving him guilty, beyond a reasonable doubt, using only legally competent evidence. As the evidence available to the Government did not meet that criterion, appellant is entitled, in accordance with his agreement with the Government and under the provisions of the Manual, to withdraw his plea of guilty.[33]
As this precedent illustrates, R.C.M. 910(a)(2) preserves and protects the Appellant’s right to make the Government prove its case with admissible evidence.[34] Honoring this fundamental right, we afford Appellant his bargained for right to withdraw his pleas of guilty and obtain a rehearing. And we do so without addressing whether or not the military judge’s error might have been harmless had there been an evidentiary proceeding in a contested case.[35]
*41 DECISION
For all of the reasons above, the decision of the United States Army Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Army for further proceedings consistent with this opinion.

. United States v. Benner, 57 M.J. 210, 212 (C.A.A.F.2002). See, e.g., United States v. Isham, 48 M.J. 603, 606-07 (N-M.Ct.Crim.App.1998) (discussing the importance of the clergy privilege to clergy keeping the trust of servicemembers and carrying out their mission of providing spiritual and moral guidance).

. Benner, 57 M.J. at 212 (quoting Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)).

. M.R.E. 503(a).

. This Court granted review on Issue I and specified Issue II as follows:
I. WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS ERRED *34 IN UPHOLDING THE RULING OF THE MILITARY JUDGE THAT DENIED THE DEFENSE MOTION TO SUPPRESS ANY EVIDENCE OBTAINED AS A RESULT OF COMMUNICATIONS BETWEEN APPELLANT AND HIS PASTOR.
II. WHETHER THE UNITED STATES ARMY COURT OF CRIMINAL APPEALS APPLIED THE CORRECT APPELLATE TEST FOR DETERMINING MATERIALITY WITH RESPECT TO THE ERRONEOUS NONDISCLOSURE OF DISCOVERABLE EVIDENCE. SEE UNITED STATES V. ROBERTS, 59 M.J. 323 (C.A.A.F.2004).
United States v. Shelton, 60 M.J. 314 (C.A.A.F.2004). Because we rule for Appellant on Issue I, we need not reach Issue II.
We heard oral argument in this case at the Marine Corps Base, Quantico, Virginia, as part of the Court's "Project Outreach.” See United States v. Mahoney, 58 M.J. 346, 347 n. 1 (C.A.A.F.2003). This practice was developed as part of a public awareness program to demonstrate the operation of a Federal Court of Appeals and the military justice system.

. The lower court opinion presents the background of this case:
A military judge sitting as a general court-martial convicted appellant, pursuant to his guilty plea, of indecent acts upon a female under sixteen years of age (three specifications), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E-l. The convening authority waived automatic forfeitures required by Article 58b, UCMJ, 10 U.S.C. § 858b, for six months and directed payment to appellant's spouse. After the six-month waiver of forfeitures had elapsed, the convening authority approved the sentence as adjudged.
United States v. Shelton, 59 M.J. 727, 728 (A.F.Ct.Crim.App.2004). The lower court affirmed the findings and the sentence. Id. at 736.

. Even if Appellant’s communications to Rev. Dennis were confidential under Washington state law and he could not testify as to the contents of Appellant’s statements in court, Rev. Dennis was not prohibited from voluntarily reporting Appellant’s admissions to protect an abused child. State v. Glenn, 115 Wash.App. 540, 62 P.3d 921, 928 n. 7 (2003).

. The defense also made a motion to compel discovery of documents removed from the CID file. That motion related to Issue II, which we do not address at this time.

. The military judge conducted the providence inquiry required by United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

. See United States v. Napoleon, 46 M.J. 279, 285 (C.A.A.F.1997); R.C.M. 905(c).

. See Manual for Courts-Martial, United States para. 151(b)(2) (1969 rev. ed.) (MCM); MCM para. 151(b)(2) (1951 ed.); Manual for Courts-Martial, U.S. Army para. 137b (1949 ed.). Earlier manuals were silent as to the clergy privilege. See United States v. Coleman, 26 M.J. 407, 409 n. 3 (C.M.A.1988).

. See Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-39 (2005 ed.) [hereinafter M.R.E. Drafters’ Analysis],

. Coleman, 26 M.J. at 409.

. See United States v. Henderson, 11 C.M.A. 556, 564, 29 C.M.R. 372, 379-80 (1960) (explaining a chaplain’s reason for refusing to disclose a communication with a servicemember). See generally Isham, 48 M.J. at 605 (discussing the ethical duty of chaplains to hold in confidence privileged communications).

. "Furthermore, this privilege is recognized in paragraph 4 — 4 of Army Regulation 165-1, Chaplain Activities in the United States Army (26 May 2000) (superseding 27 Feb. 1998), and paragraph 3-8 of Army Regulation 608-18, The Family Advocacy Program (1 September 1995).” Benner, 57 M.J. at 212.

. This is not the only privilege available for a servicemember to obtain confidential counseling. In M.R.E. 513 the President adopted a psychotherapist-patient privilege for the military justice system. "The rule allows a patient the privilege to refuse to disclose, or allow another to disclose, a confidential communication between the patient and a psychotherapist.” United States v. Clark, 62 M.J. 195, 199 (C.A.A.F.2005). This rule is " 'based on the social benefit of confidential counseling recognized by Jaffee [v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996)], and similar to the clergy-penitent privilege.’ " Id. (quoting M.R.E. Drafters’ Analysis app. 22 at A22-44 (2000 ed.)).

. See, e.g., Napoleon, 46 M.J. at 283-85; Coleman, 26 M.J. at 409-10.

. See United States v. Siroky, 44 M.J. 394, 399 (C.A.A.F.1996).

. United States v. McCollum, 58 M.J. 323, 335 (C.A.A.F.2003) (citing United States v. McElhaney, 54 M.J. 120, 132 (C.A.A.F.2000)).

. Id. at 335-36.

. Id. at 336 (citing United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F.1995)).

. Trammel, 445 U.S. at 50, 100 S.Ct. 906.

. See Napoleon, 46 M.J. at 284-85.

. M.R.E. 503(a) (emphasis added).

. See generally Isham, 48 M.J. at 605-06 (holding that the appellant's discussion with the chaplain concerned a matter of conscience); United States v. Richards, 17 M.J. 1016, 1019-20 (N.M.C.M.R.1984) (finding an appellant’s admissions involved a “matter of conscience”).

. Napoleon, 46 M.J. at 284 (citing 2 Stephen A. Saltzburg & Michael M. Martin, Federal Rules of Evidence Manual § 601-02 (5th ed.1990), and Stephen A. Saltzburg, Lee D. Schinasi & David A. Schlueter, Military Rules of Evidence Manual § 557 (3d ed.1991)).

. Coleman, 26 M.J. at 409 (agreeing with United States v. Moreno, 20 M.J. 623, 627 (A.C.M.R.1985)).

. In re Grand Jury Investigation, 918 F.2d 374, 377 (3d Cir.1990).

. Id. at 385-88.

. Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

. The military judge’s explanation to Appellant made clear that Appellant would have the option of withdrawing from his guilty plea if the military judge’s ruling on the privilege was reversed on appeal. We note that the lower court assumed “that if the defense had succeeded in suppressing any of [the evidence], appellant could have withdrawn his guilty plea.” Shelton, 59 M.J. at 728.

. See United States v. Barror, 23 M.J. 370, 373 (C.M.A.1987) (holding that the military judge erred in denying the defense’s motion to suppress the victim's pretrial statement, upon which the appellant’s guilty plea was conditioned, and allowing the appellant to replead to the affected specification in the event of a rehearing).

. Id.

. Id. at 373 (emphasis added).

. Our reliance on Barror in no way suggests that Appellant must establish that the Government relied on his privileged statement to prove his guilt. Appellant entered a conditional guilly plea, and the condition occurred. As a matter of law, in the context of this conditional guilty plea, Appellant was entitled to withdraw his guilty plea when Appellant prevailed in his appellate challenge to the evidentiary ruling.

. The reasoning of Barror, 23 M.J. at 373, focusing on the government's burden of proof, explains why in this case it would be inappropriate to inquire into whether Appellant’s subsequent statements to Ms. Doyle and Mr. Comte are sufficiently attenuated to be admissible. Cf. Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).