*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
### FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Dominic L. RUIZ, Corporal
United States Marine Corps, Appellant

**No. 24-0158**
Crim. App. No. 202300007

Argued March 18, 2025—Decided August 8, 2025

Military Judges: Adam M. King (arraignment and motions), Cory M. Picton (motions), Melanie J. Mann (trial), and Benjamin C. Robertson (entry of judgment)

For Appellant: *Lieutenant Raymond E. Bilter*, JAGC, USN (argued); *Major Colin W. Hotard*, USMC (on brief).

For Appellee: *Lieutenant Commander James P. Wu Zhu*, JAGC, USN (argued); *Colonel Iain D. Pedden*, USMC, *Lieutenant Colonel Candace G. White*, USMC, and *Brian K. Keller*, Esq. (on brief); *Colonel Joseph M. Jennings,* USMC.

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined.

————————

Judge JOHNSON delivered the opinion of the Court.

In this abusive sexual contact case, Appellant argues the military judge erred by admitting the complaining witness's statement to law enforcement as a prior consistent statement pursuant to Military Rule of Evidence (M.R.E.) 801(d)(1)(B)(ii) to rehabilitate her faulty memory at trial. We conclude the military judge did not abuse her discretion. Accordingly, we affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA).

## I. Background

In May 2020, Appellant arrived at Marine Corps Base Camp Lejeune, North Carolina, on temporary duty. Looking to "meet up with people" while he was in town, he contacted several friends he had met several years earlier when they were "poolees" in the Marine Corps Delayed Entry Program. One of those poolees, Ms. Sierra,[1] responded. Appellant and Ms. Sierra made plans to "hang out." When he arrived at her house to pick her up, she told him her husband would not be joining them because he was in the brig.

Appellant and Ms. Sierra picked up a couple of bottles of wine and some takeout and returned to her house to eat dinner and catch up. They drank the wine and then went outside to "shotgun"[2] a couple of beers and alcohol-spiked iced teas apiece.

By this time, Ms. Sierra was intoxicated. She testified that Appellant helped her inside and sat her at the kitchen table. The next thing she remembered was sitting on his

---

[1] Ms. Sierra was an active duty lance corporal at the time of the alleged offense but had separated from the Marine Corps at the time of the trial. In this opinion, we use the pseudonyms adopted by the lower court.

[2] Ms. Sierra explained, "Shotgunning is where you poke a hole in the side of the can and then you put it up to your mouth and then you crack it open and chug it."

lap on the couch, trying to pull away while he held on to her and "shushed" her. She described fragmented memories of waking up in her bed with Appellant hovering over her and seeing him go into the bathroom. She believed they were both clothed at that time, although she did not remember clearly. Her next memory was of Appellant lying in bed with her, running his hand over her body.

> [Ms. Sierra]: . . . And then after that, I just remember him rubbing himself against me from my vaginal area to my buttocks. And I just remember him saying how he just wanted to make me feel good. And that my husband didn't deserve me.
>
> [Assistant Trial Counsel] (ATC): What did he rub in your vaginal area to your buttocks?
>
> [Ms. Sierra]: His genitals.
>
> ATC: His penis?
>
> [Ms. Sierra]: Yes, sir.
>
> ATC: Did you say anything to him?
>
> [Ms. Sierra]: I did when he tried to kiss me, he kept trying to put his hand against my cheek and kept on trying to bring my face over to kiss him. And I said, "No, stop." And I pushed his face away.
>
> ATC: Did he continue to grind against your buttocks after that?
>
> [Ms. Sierra]: Yes, sir.
>
> ATC: Were you crying at the time?
>
> [Ms. Sierra]: Yes, sir.
>
> ATC: Why?
>
> [Ms. Sierra]: Because I didn't want it to happen.
>
> ATC: What is your very next memory?
>
> [Ms. Sierra]: I remember just crying out for my husband, just wanting him to be there. And then I remember just blacking out.

Ms. Sierra testified that when she came to, Appellant was asleep in bed next to her. She slid off the bed, crawled out of the bedroom and down the stairs, and made her way to the neighbors' house. She banged on the door and called

for help until they let her in. The neighbors gave her a shirt to wear "because I guess I was naked." She had no recollection of when or how her clothes came off.

Ms. Sierra testified that she recalled riding in an ambulance, and then waking up in a hospital. She recalled speaking with various people while she was at the hospital, including a police officer. Later, after she had slept, Ms. Sierra submitted to a sexual assault forensic exam (SAFE).

On cross-examination, Ms. Sierra acknowledged there were significant gaps in her memory of the night of the assault. She acknowledged it was "possible" she had made statements to law enforcement and the SAFE nurse soon after the incident, but at the time of trial she did not remember what she told them.[3]

Both trial counsel and trial defense counsel questioned Deputy Frank, a civilian sheriff's deputy who spoke with Ms. Sierra at the hospital in the immediate aftermath of the alleged assault. Trial counsel asked Deputy Frank, "What did she say happened?" The military judge sustained a defense objection to hearsay, rejecting trial counsel's attempt to admit the statement as an excited utterance. However, the military judge allowed the defense to cross-examine Deputy Frank on Ms. Sierra's hospital statements as prior inconsistent statements offered to impeach by contradiction her trial testimony. After reviewing his notes on the interview, Deputy Frank testified that Ms. Sierra told him she sat on Appellant's lap, she drank two glasses of wine and shotgunned two beers, and she recalled Appellant's pants coming off.

On redirect, trial counsel sought to admit additional statements Ms. Sierra made to Deputy Frank during the hospital interview, including statements that Appellant

---

[3] Ms. Sierra also acknowledged that her testimony described details she had not previously reported to anyone, including that Appellant hovered over her in the bed; she was clothed at that time; he went into the bathroom; and he "shushed" her when she was sitting on his lap.

4

"was rubbing his genitals against her and that she said, 'No' and that she doesn't recall how she got to the bedroom." Because the defense had cross-examined Ms. Sierra on "statements made to others that were either left out of her in-court testimony or about new statements she made in-court," trial counsel argued these additional statements were admissible under M.R.E. 801(d)(1)(B)(ii) as prior consistent statements to rehabilitate her credibility.

The defense objected, arguing the additional statements were beyond the scope of the prior inconsistent statements elicited on cross-examination. Trial counsel disagreed, arguing:

> [T]he defense has opened the door through asking about her story. This happened in a 10-minute conversation. They're pointing out . . . what they wish to impeach her on inconsistent, but there's a lot of consistency there and now they have opened the door through impeachment for us to rehabilitate. We have consistent statements. This all happened in the same conversation. Sentences right next to each other in partial sentences. It's even a completeness issue, even.

The military judge initially sustained the defense objection, noting, "I'm not seeing how there has been . . . a general attack on the credibility. Period." However, after reviewing trial counsel's bench brief and hearing additional arguments on the issue, she ruled Ms. Sierra's statements "that the accused was rubbing her genitals with his penis and that she said, 'No' and that Ms. [Sierra] did not know how she got up the stairs" were admissible prior consistent statements because they "add context to the inconsistent statements that were elicited on cross-examination . . . and . . . they demonstrate that Ms. [Sierra] has a memory of key events and details that have been consistent."

Following the military judge's ruling, trial counsel (TC) questioned Deputy Frank as follows:

> TC: Okay. Did she tell you that she doesn't remember how she got to the bedroom?
>
> [Deputy Frank]: Yes, sir.

TC: Did she tell you that he rubbed his genitals against her?

[Deputy Frank]: Yes, sir.

TC: And that she said, "No"?

[Deputy Frank]: Yes, sir.

On July 29, 2022, a panel of officer and enlisted members sitting as a general court-martial convicted Appellant, contrary to his plea, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2018). The military judge sentenced him to a bad-conduct discharge and reduction to E-1. The NMCCA affirmed the findings and sentence. *United States v. Ruiz*, No. 202300007, 2024 CCA LEXIS 114, at *2, 2024 WL 1190555, at *1 (N-M. Ct. Crim. App. Mar. 20, 2024) (unpublished).

We granted review to determine whether the military judge abused her discretion in admitting Ms. Sierra's statement to Deputy Frank as a prior consistent statement under M.R.E. 801(d)(1)(B)(ii). *United States v. Ruiz*, 85 M.J. 203 (C.A.A.F. 2024) (order granting review). For the reasons stated below, we answer the granted issue in the negative and affirm the decision of the NMCCA.

## II. Standard of Review

"This Court reviews a military judge's decision to admit evidence for an abuse of discretion." *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019) (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). A military judge abuses her discretion when her "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *Id.* (internal quotation marks omitted) (citation omitted). The abuse of discretion standard requires "more than a mere difference of opinion. The challenged action must be arbitrary . . . , clearly unreasonable, or clearly erroneous." *United States v. Wicks*, 73 M.J. 93, 98 (C.A.A.F. 2014) (alteration in original) (internal quotation marks omitted)

(citation omitted). "[W]hen reviewing a military judge's ruling for an abuse of discretion, [this Court] pierce[s] the CCA's opinion and examine[s] the military judge's ruling directly." *United States v. Carpenter*, 77 M.J. 285, 287 n.5 (C.A.A.F. 2018) (citing *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006)).

### III. Law

"As a general rule, hearsay, defined as an out of court statement offered into evidence to prove the truth of the matter asserted, is not admissible in courts-martial." *United States v. Ayala*, 81 M.J. 25, 28 (C.A.A.F. 2021) (first citing M.R.E. 801(c); and then citing M.R.E. 802). However, M.R.E. 801(d)(1)(B) provides that certain out of court statements are excluded from the prohibition on hearsay. A declarant witness's prior consistent out of court statement is not hearsay if offered "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." M.R.E. 801(d)(1)(B)(i)-(ii). It is the latter exclusion that is at issue in this case.

A prior consistent statement is admissible under M.R.E. 801(d)(1)(B)(ii) if it satisfies the following factors (hereinafter, the *Finch* factors):

> (1) the declarant of the out-of-court statement must testify,
>
> (2) the declarant must be subject to cross-examination about the prior statement,
>
> (3) the statement must be consistent with the declarant's testimony,
>
> (4) the declarant's credibility as a witness must have been "attacked on another ground" other than the ones listed in M.R.E. 801(d)(1)(B)(i), and
>
> (5) the prior consistent statement must actually be relevant to rehabilitate the witness's credibility on the basis on which he or she was attacked.

*United States v. Finch*, 79 M.J. 389, 396 (C.A.A.F. 2020).
Additionally, " 'to be admissible for rehabilitation, a prior
consistent statement must satisfy the strictures of Rule
403,' " *id.* (quoting *Manual for Courts-Martial, United
States*, Analysis of the Military Rules of Evidence app. 16
at A22-61 (2016 ed.)), which provides that "[t]he military
judge may exclude relevant evidence if its probative value
is substantially outweighed by a danger of one or more of
the following: unfair prejudice, confusing the issues, mis-
leading the members, undue delay, wasting time, or need-
lessly presenting cumulative evidence." M.R.E. 403.
" 'Where a military judge properly conducts the balancing
test under Military Rule of Evidence 403, we will not over-
turn [her] decision unless there is a clear abuse of discre-
tion.' " *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F.
2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251
(C.A.A.F. 1998)). The party seeking admission of the prior
consistent statement bears the burden of proving its ad-
missibility. *United States v. Norwood*, 81 M.J. 12, 17
(C.A.A.F. 2021).

**IV. Discussion**

Appellant argues Ms. Sierra's out of court statement to
Deputy Frank was inadmissible because it was neither con-
sistent with her testimony nor relevant to rehabilitating
her credibility on the basis on which she was attacked. Ac-
cording to Appellant, Ms. Sierra testified that she said
"[n]o" only when he tried to kiss her—testimony that was
inconsistent with her prior statement to Deputy Frank that
she said "[n]o" when Appellant rubbed his genitals on her.
Additionally, Appellant contends the prior statement did
not rehabilitate Ms. Sierra's credibility on the basis on
which she was attacked because the defense never chal-
lenged her testimony that Appellant rubbed his penis
against her. Instead, according to Appellant, *trial counsel*
put Ms. Sierra's credibility in issue by "fram[ing] his ques-
tions . . . to highlight her lack of memory," and then, taking
advantage of the door he had opened, trial counsel offered
the prior statement to rehabilitate her credibility in gen-
eral. Appellant claims he was prejudiced by the erroneous

admission of the prior statement because it was the *only* evidence Ms. Sierra articulated nonconsent to the charged conduct—a fact of central importance to an otherwise-weak Government case.[4]

The Government responds that it offered Ms. Sierra's statement to Deputy Frank only after the defense attacked her faulty memory, to show that her memory at trial was not faulty and her statements were largely consistent. Moreover, the Government argues that even if erroneously

---

[4] The parties agree that a prior consistent statement must have been made before any alleged fabrication, influence, or motive came into being. They disagree as to when any such fabrication, influence, or motive actually came into being in this case, and therefore, they disagree as to whether the statement preceded the alleged fabrication, influence, or motive.

It is true that a prior consistent statement "must precede any motive to fabricate or improper influence that it is offered to rebut." *Frost*, 79 M.J. at 110 (citing M.R.E. 801(d)(1)(B)(i)). However, the prior consistent statement at issue here was not offered to rebut a charge of recent fabrication or improper influence or motive; it was offered to rehabilitate an attack based on faulty memory. We have never held that a prior consistent statement must precede the onset of a faulty memory in order to be admissible under M.R.E. 801(d)(1)(B)(ii), and we decline to do so now, for three reasons:

> First, if the charge is a lack of credibility based on a faulty memory or any "[]other ground," then a prior consistent statement made at *any* point . . . will "rehabilitate" the witness. Second, it is almost impossible to pinpoint a specific point in time when a faulty memory arises, unlike a motive to lie or other improper influence, so it would not "make[] . . . sense" to import a timing requirement. And finally, timing has never mattered for category-two prior consistent statements, at common law or now.

*United States v. Begay*, 116 F.4th 795, 801 (8th Cir. 2024) (first, second, fourth, and fifth alterations in original) (first quoting *Tome v. United States*, 513 U.S. 150, 158 (1995); and then quoting *United States v. Andrade*, 788 F.2d 521, 532-33 (8th Cir. 1986)).

admitted, Appellant suffered no prejudice because the prior statement was corroborated by Ms. Sierra's testimony and independent evidence.

As explained in greater detail below, we conclude the Government met its burden of establishing Ms. Sierra's statement to Deputy Frank was admissible under M.R.E. 801(d)(1)(B)(ii) as a prior consistent statement to rehabilitate her credibility regarding her expression of nonconsent to the charged conduct. Therefore, we hold the military judge did not abuse her discretion by admitting Ms. Sierra's prior consistent statement.

As an initial matter, we note there is no dispute that the Government met its burden of establishing the first two *Finch* factors. First, Ms. Sierra—the declarant of the out of court statement—testified at trial. Second, she was subject to cross-examination about the prior statement.

Similarly, we discern no meaningful dispute as to the fourth *Finch* factor. Although the parties disagree as to who placed Ms. Sierra's credibility at issue first,[5] Appellant concedes that "the Defense's attack on cross-examination and its case theory was always that Ms. [Sierra] had a faulty memory" due to alcohol-induced amnesia.[6] Additionally, Appellant concedes "the Defense's attack on Ms.

---

[5] Appellant argued at trial that the defense did not attack Ms. Sierra's credibility at all, as the defense did not challenge her testimony that Appellant rubbed his penis against her and that she said no when he tried to kiss her. In his brief to this Court, Appellant argues that trial counsel "framed his questions to [Ms. Sierra] to highlight her lack of memory," and then, "under the guise of rehabilitating [her] credibility," admitted hearsay testimony that she expressed nonconsent to the charged conduct. In his reply brief, Appellant continues to assert that the Government "opened the door" to testimony about Ms. Sierra's intoxicated state and her ability to remember, but acknowledges the defense then attacked her credibility based on her faulty memory due to alcohol-induced amnesia.

[6] Trial defense counsel told the panel members during opening statements that they would hear "multiple versions" of what happened after Ms. Sierra became intoxicated.

[Sierra]'s credibility was not based on recent fabrication or any other improper influence or motive that arose between the night in question and the trial." Thus, there is no dispute that Ms. Sierra's "credibility as a witness was 'attacked on another ground' other than the ones listed in M.R.E. 801(d)(1)(B)(i)." *Finch*, 79 M.J. at 396. Therefore, the first, second, and fourth *Finch* factors favor admissibility of the prior statement.

Appellant argues the remaining *Finch* factors weigh against admissibility because Ms. Sierra's prior statement was neither consistent with her testimony (*Finch* factor three) nor relevant to rehabilitating her credibility on the basis on which she was attacked (*Finch* factor five). We disagree with both of these contentions.

With regard to *Finch* factor three, Appellant argues Ms. Sierra's statement to Deputy Frank that she said "[n]o" when Appellant touched her buttocks and vaginal area is inconsistent with a fact of central importance to the trial—specifically, her testimony that she said "[n]o" when Appellant tried to kiss her. The NMCCA rejected this argument, raised for the first time on appeal,[7] concluding it "mischaracterizes the nature of the evidence by creating a sequence of events that the testimony does not support." *Ruiz*, 2024 CCA LEXIS 114, at *20, 2024 WL 1190555, at *8.

" '[A] prior consistent statement need not be identical in every detail to the declarant's . . . testimony at trial.' Rather, the prior statement need only be 'for the most part consistent' and in particular, be 'consistent with respect to . . . fact[s] of central importance to the trial.' " *Finch*, 79 M.J. at 395 (second, third, and fourth alterations in

---

[7] Trial defense counsel did not challenge the consistency of Ms. Sierra's prior statement with her trial testimony, telling the military judge, "really, the only factor that is at issue here is the fifth one, which is 'the prior consistent statement must actually be relevant to rehabilitate the witness'[s] credibility on the basis on which she was attacked.' " The military judge correctly cited the *Finch* factors, but did not explicitly address the consistency of the prior statement and Ms. Sierra's trial testimony.

original) (quoting *United States v. Vest*, 842 F.2d 1319, 1329 (1st Cir. 1988)); *see also Griggs v. State*, 2016 WY 16, ¶ 100, 367 P.3d 1108, 1136 (Wyo. 2016) (explaining that "[a] prior consistent statement cannot be used as a means of proving 'new points not covered in the testimony' of the declarant" (citation omitted)).

We conclude that Ms. Sierra's prior statement to Deputy Frank is "generally consistent" with her in-court testimony. *Finch*, 79 M.J. at 398 (internal quotation marks omitted) (citation omitted). Deputy Frank testified that Ms. Sierra told him Appellant rubbed his genitals against her, and she said "[n]o." Ms. Sierra's testimony described an ongoing interaction in which Appellant was "rubbing himself against me from my vaginal area to my buttocks"; he "kept trying to put his hand against my cheek and kept on trying to bring my face over to kiss him. And I said, 'No, stop.' And I pushed his face away"; and he continued to rub against her after she pushed his face away. While Deputy Frank's testimony was not as detailed as Ms. Sierra's testimony, it was "generally consistent" with "Ms. Sierra's earlier testimony that she told Appellant 'no' *as he assaulted her*." *Ruiz*, 2024 CCA LEXIS 114, at *12, *21, 2024 WL 1190555, at *5, *8 (emphasis added). Moreover, Ms. Sierra's prior consistent statement did not prove important details beyond what was established in her initial testimony. *See* Christopher B. Mueller & Laird C. Kirkpatrick, 4 *Federal Evidence* § 8:38 (4th ed. 2023) (Rule 801(d)(1)(B)(ii) should not "enable a party to prove important details lying beyond that testimony" through a prior statement "merely because they are consistent with its general tenor."); *State v. Farrah*, 735 N.W.2d 336, 344 (Minn. 2007) (Rule 801(d)(1)(B) "should not be the means to prove new points not covered in the testimony of the speaker" (internal quotation marks omitted) (citation omitted)). Therefore, we conclude the Government met its burden of establishing *Finch* factor three.

With respect to *Finch* factor five, the Government bears the burden of demonstrating the prior consistent statement is relevant to rehabilitating the witness's credibility

on the basis on which she was attacked. *Finch*, 79 M.J. at 396 (stating that the proponent of the prior consistent statement must articulate "the relevancy link between the prior consistent statement and how it will rehabilitate" the witness's in-court testimony "with respect to the particular type of impeachment that has occurred" (citation omitted)). We conclude the military judge did not abuse her discretion in determining the Government met its burden.

The defense theory of the case was that Ms. Sierra was not a credible witness because she was unable to recall much of what happened on the night in question. Consistent with this theory, the defense attacked Ms. Sierra's credibility on cross-examination by highlighting her faulty memory. After establishing that Ms. Sierra had not spoken with defense counsel prior to this cross-examination, the defense began by asking, "Ma'am, that night, it's fair to say that your memory is not completely clear as to what transpired—what occurred; fair to say?" The defense then methodically questioned her about her inability to remember facts and statements she had previously provided to law enforcement, the SAFE nurse, and prosecutors, as well as her trial testimony to new facts she disclosed only days before trial. The defense specifically questioned her about whether she remembered anything she told Deputy Frank; she responded, "Not as of right now, sir. I don't really remember."

The Government subsequently sought to admit Deputy Frank's testimony about what Ms. Sierra said soon after the charged conduct to show "that her memory, in fact, is not that bad, that she is credible." Deputy Frank's testimony was relevant to rehabilitating her credibility regarding her memory of a fact of central importance to the trial: whether she ever expressed nonconsent to the charged conduct. This is true even though the defense did not specifically cross-examine Ms. Sierra on her testimony that Appellant rubbed his penis on her and that she said "[n]o," because it countered the broader defense attack on her memory of the night as a whole. In that context, we conclude Ms. Sierra's prior consistent statement was relevant

to rehabilitate her credibility when attacked on the basis that she could not remember details surrounding the charged conduct and the night in question.

Appellant argues that Ms. Sierra's statement to Deputy Frank could not rehabilitate her credibility because she was already suffering from alcohol-induced amnesia when she spoke to Deputy Frank. Appellant asserts that Ms. Sierra's statements to Deputy Frank therefore had the same credibility problem as her later testimony in the court-martial. Accordingly, Appellant contends that the consistency of her statements to Deputy Frank and her testimony in the court-martial was irrelevant. Although we understand the logic of this argument, we are unpersuaded that the military judge abused her discretion in viewing Appellant's challenge to Ms. Sierra's credibility and the Government efforts at rehabilitation in a different way. The record shows that trial defense counsel extensively attacked differences between Ms. Sierra's testimony at trial and the accounts of the assault that she gave to various law enforcement officials, prosecutors, and medical personnel, and that trial defense counsel did not solely focus on Ms. Sierra's inability to register memories.

" '[W]here the military judge places on the record [her] analysis and application of the law to the facts, deference is clearly warranted.' " *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014) (quoting *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002)). Here, the military judge placed her analysis on the record, finding the prior statement added "context" to inconsistent statements elicited on cross-examination and demonstrated that Ms. Sierra had consistent memories of significant facts and details. Additionally, the military judge found the prior statement was relevant and probative because it was made "during the same statement to the same agent on the night of the allegation." Finally, the military judge concluded the probative value of the prior consistent statement was not outweighed by the danger of unfair prejudice or confusion.

Affording the military judge due deference, we find no abuse of discretion in her admission of Ms. Sierra's

statement to Deputy Frank. As discussed above, the prior statement was consistent with her testimony on a fact of central importance, and it was relevant to rehabilitating her credibility after the defense attempted to show she was an unreliable witness because she could not remember facts of central importance to the case. Accordingly, we conclude that the military judge did not abuse her discretion.

## V. Judgment

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.